Catherine C. ALIFF, et. vir., Respondent,

v.

David L. CODY, Appellant.

No. WD 55680.

Missouri Court of Appeals, Western District.

Feb. 9, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1999.

Gregory J. Minana, Blackwell, Sanders, Peper, Martin, Kansas City, for appellant.

H. William McIntosh, McIntosh, Knepper, Hobson & Healy, Kansas City, for respondent.

Before BRECKENRIDGE, C.J., and SMART and LAURA DENVIR STITH, JJ.

BRECKENRIDGE, C.J.

David L. Cody appeals the trial court's ruling sustaining Carol and James Aliff's motion for a new trial based upon a juror's nondisclosure of her involvement in previous litigation. On appeal, Mr. Cody contends that the trial court abused its discretion in finding that the juror intentionally failed to disclose her previous litigation experiences. The Aliffs contend that the trial court's findings are supported by the record and that

the court did not abuse its discretion in ordering a new trial. We find that the juror did not intentionally conceal information relating to her prior litigation experiences and that the Aliffs were not prejudiced by the nondisclosure. The ruling of the trial court is reversed and remanded for entry of judgment on the jury's verdict.

### Facts and Procedural Background

The facts underlying this case are not disputed on appeal and a detailed recitation is not necessary for our review. The cause of action in this case arose from an automobile accident on February 20, 1992, involving Mr. Cody and Ms. Aliff. On May 19, 1995, Ms. and Mr. Aliff filed a petition against Mr. Cody in the Circuit Court of Jackson County, at Independence, seeking damages for Ms. Aliff's injuries arising out of the automobile accident and for Mr. Aliff's loss of consortium. The case was dismissed without prejudice on November 7, 1996, and an amended petition was filed the same day. The case proceeded to trial on April 7, 1997, but following the selection and impanelment of a jury and the presentation of evidence, a mistrial was entered on April 16, 1997. On May 13, 1997, the case was transferred to the Jackson County Circuit Court, at Kansas City. On July 29, 1997, the Aliffs filed a third amended petition adding a co-defendant to their claim for damages. On October 6, 1997, a new jury was impaneled and opening statements were heard. However, on October 7, 1997, following a conference regarding motions in limine, a second mistrial was declared.

The case again proceeded to trial and a new jury was impaneled on January 12, 1998. At voir dire, the Aliffs' attorney questioned the panel as follows:

I started to ask if anybody has been a party to a lawsuit. By that I mean, have you ever sued anybody or has anybody sued you? There are a couple of things that I want to exclude from that. One is divorce. I don't want to hear about divorces or child custody fights. Those things are things that, when you hear about litigation problems, that's where it is. We don't practice in that area. So

outside of those two areas. And Small Claims Court, I really don't care about that, where you go in and represent yourself.

Have any of you, other than those things, been either a plaintiff, someone who's suing, or a defendant, someone who has been sued?

Juror Carol Cheatom did not respond to this question, although she had previously been involved in four landlord-tenant lawsuits. The case was fully tried and on January 16, 1998, the jury returned a verdict in favor of the defendant, Mr. Cody.

On February 2, 1998, the Aliffs filed a motion for a new trial, alleging in part that juror Cheatom, who signed the verdict in Mr. Cody's favor, "failed to reveal, during voir dire questioning as to whether any panel member had been a party to a lawsuit, that she had been a defendant in four separate lawsuits.... "The Aliffs pointed out that juror Cheatom had been a defendant in four landlord-tenant disputes over the preceding two years." In response, Mr. Cody argued that juror Cheatom did not intentionally fail to disclose her previous involvement in lawsuits because the voir dire question was unclear and she reasonably understood it to exclude matters of the type in which she had been involved.

On March 27, 1998, the court held a hearing in which juror Cheatom was questioned regarding her answers to the voir dire questions. At the hearing, the Aliffs' attorney established that juror Cheatom had been a defendant in four lawsuits for rent filed by her landlord, Larry Snyder. Juror Cheatom testified that each case was heard in front of a judge, not a jury, and there were no attorneys involved. She testified that at the time of the hearing, she believed the cases were similar to Small Claims Court cases.

Juror Cheatom testified that when the jury venire was asked if anyone had been a party to a lawsuit other than domestic or small claims disputes, the four landlord-tenant disputes did not enter her mind. Upon further questioning, juror Cheatom testified that she did not reveal her involvement in these suits because she believed they were all in Small Claims Court. She testified that she did not

think counsel wanted to hear about disputes of this nature, because they were small lawsuits and both she and the landlord appeared without an attorney. Juror Cheatom continued by denying that these claims ever crossed her mind during voir dire. Juror Cheatom concluded her testimony by stating that she thought about the landlord-tenant disputes during voir dire, but she chose not to answer because she did not feel counsel was asking the panel to reveal matters such as these.

Following the hearing, the trial court granted the Aliffs' motion for a new trial "based solely on the issue of juror nondisclosure," citing *Brines by and through Harlan v. Cibis*, 882 S.W.2d 138, 139 (Mo. banc 1994), and *Groves v. Ketcherside*, 939 S.W.2d 393, 395 (Mo.App.1996). Mr. Cody then filed a timely notice of appeal to this court challenging the trial court's order granting the Aliffs' motion for a new trial.

### Juror's Failure to Disclose at Voir Dire Previous Involvement in Four Landlord–Tenant Suits Does Not Require New Trial

■ On appeal, Mr. Cody argues that the trial court erred in granting the Aliffs' motion for a new trial because the voir dire question was too confusing for a reasonable juror to comprehend the information solicited and, therefore, juror Cheatom did not intentionally fail to disclose her involvement in the four previous lawsuits. The Aliffs contend that juror Cheatom's hearing testimony indicates that she remembered the experiences, understood the question and intentionally chose to remain silent. We find that the question was not sufficiently clear to alert juror Cheatom that counsel wanted to hear about her landlord-tenant litigation and, therefore, her failure to disclose those experiences was unintentional.

■ The test for determining whether juror nondisclosure is intentional or unintentional is set out in *Williams by Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987). "Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and

2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable." *Id.* "Unintentional nondisclosure exists where, for example, the experience forgotten was insignificant or remote in time, or where the venireman reasonably misunderstands the question posed." *Id.* (internal citations omitted). "Intentional nondisclosure does not occur when there is a 'reasonable inability to comprehend' the question; confusion can arise when counsel 'narrow[s] the focus of the questions.'" *Heinen v. Healthline Management, Inc.*, 982 S.W.2d 244, 248–49 (Mo. banc) (quoting *Williams*, 736 S.W.2d at 36, 37). Whether nondisclosure is intentional or unintentional is left to the sound discretion of the trial court and its ruling will be disturbed on appeal only for an abuse of discretion. *Williams*, 736 S.W.2d at 36.

To determine whether juror Cheatom intentionally concealed her involvement in previous litigation, it is instructive to consider several Missouri cases which have addressed whether a juror's nondisclosure was intentional or unintentional, focusing on the clarity of the question. First we will examine two cases in which the voir dire question was found unclear and the juror's nondisclosure was unintentional. In *Heinen*, the plaintiffs moved for a new trial based in part on a juror's failure to disclose a previous adult abuse case against him. *Id.* At voir dire, the plaintiffs' attorney asked the jury venire if anyone had been "sued," but narrowed the question by saying "if it's something to do with divorces or child custody, I don't even want to hear about that." *Id.* The Supreme Court found that from the limitation placed on the question, the juror "reasonably could have understood that plaintiffs' counsel did not seek disclosure of domestic litigation, including his case." *Id.* Because the juror reasonably did not understand the question to require disclosure of the adult abuse case, the Supreme Court found that the nondisclosure was unintentional. *Id.*

In another case finding the juror's nondisclosure was unintentional, the defendants claimed that a juror failed to disclose during voir dire that she had cared for her daughter

after she had been assaulted. *McHaffie v. Bunch*, 891 S.W.2d 822, 829 (Mo. banc 1995). At voir dire, counsel for the defendants asked the venire, "Is there anyone on the panel who is either now or in the past been required to provide care for someone who is seriously ill or seriously injured?" *Id.* The juror did not respond to the question. The Supreme Court found that the juror's undisclosed experience consisted of her spending three weeks "helping [her daughter] to put that experience [the assault] behind her" and counseling on one occasion. *Id.* Comparing the voir dire question and the juror's experience, the Supreme Court found that "the *voir dire* questions were not sufficiently clear as to require [the] juror ... to make disclosure." *Id.*

In contrast to *Heinen* and *McHaffie*, in *Brines* and *Groves*, the reviewing court found the voir dire question was sufficiently clear for the juror to understand the information solicited by the question and that each juror's nondisclosure was intentional. In *Brines*, the trial judge asked the jury venire, "Do we have anyone on the [jury] panel who is now or has been a defendant in a lawsuit?" 882 S.W.2d at 139. The juror in question did not respond, although he had been sued on eight previous occasions. *Id.* The Supreme Court found that "the question unequivocally triggered the prospective jurors' duty to disclose previous lawsuits against them." *Id.* The court explained that the juror in question understood that he was being asked to reveal any lawsuits filed against him, that the suits were of recent vintage and that he actually recalled the lawsuits at voir dire. *Id.* In light of the juror's apparent understanding and recollection, the Supreme Court found that the juror's explanation for his silence that the question "just didn't click," "just didn't connect," and that the prior lawsuits did not "pop into" his head was unreasonable. *Id.* The court found that under those circumstances, the failure to disclose was intentional. *Id.*

In *Groves*, this court found that in light of the clear question and the unlikeliness that the juror would forget the death of his wife and the ensuing litigation, the juror intentionally failed to disclose information which prejudiced the plaintiff. 939 S.W.2d at 394.

The plaintiff alleged that a juror's failure to disclose that he had received an unfavorable ruling in a wrongful death action against a physician for the death of his wife required a new trial. *Id.* at 395. At voir dire, counsel for the plaintiff asked the venire, "[I]s there anyone else here who feels that you or a member of your immediate family has been the victim of extreme or excessive medical treatment by a physician?" and "Do any of you here ... feel that you've been treated improperly by some doctor in any way?" *Id.* The juror did not respond to either question. *Id.* This court held that "based upon the questions asked there was no reasonable inability to comprehend the information solicited ... and any purported forgetfulness on the part of the juror about his lawsuit would be unreasonable." *Id.* at 396.

Comparing this case to the preceding four cases, we find that *Heinen* and *McHaffie* are more analogous to the factual situation in this case. As the attorney in *Heinen* caused confusion when he narrowed the scope of his question, the Aliffs' attorney created doubts when he then narrowed his question to exclude "Small Claims Court ... where you go in and represent yourself." *See Heinen*, at 248–49. From the limitation he placed on the question, juror Cheatom could have reasonably believed that he did not intend to elicit information relating to landlord-tenant disputes over small amounts of money in which both parties represented themselves. *See id.* The question did not clearly indicate to the venire that counsel desired information such as minor landlord-tenant conflicts. *See e.g. McHaffie*, 891 S.W.2d at 829. Although an attorney may have clearly understood that juror Cheatom's lawsuits were not "Small Claims Court" disputes but were cases in the associate circuit division involving small amounts of money, to a lay person, legal terms and definitions may be ambiguous and confusing. Given counsel's brief explanation of "small claims court" as "where you go in and represent yourself," it is not difficult to perceive how a lay person could have reasonably understood the question to exclude matters such as juror Cheatom's. Because the voir dire question was not clear and juror Cheatom reasonably did not understand her experiences to fall within the scope of the question, we find that her failure to reveal

the landlord-tenant lawsuits was not intentional.

When nondisclosure is not intentional, a new trial is not required unless prejudice is shown to exist from the nondisclosure which " 'may have influenced the verdict.'" *Heinen,* at 250 (quoting *Williams,* 736 S.W.2d at 37). The party alleging prejudice bears the burden of proving that the nondisclosure may have influenced the verdict. *Id.* "[A]n unintentional failure to disclose information not connected with the case or bearing on the prospective juror's ability to fairly evaluate the evidence does not necessarily show prejudice on the part of the juror." *Williams,* 736 S.W.2d at 37. In *Heinen,* the Missouri Supreme Court found that the juror's prior litigation involving an adult abuse order being entered against him "ha[d] no bearing on the medical malpractice/wrongful death case or on [his] ability to fairly evaluate the evidence." Slip op. at 10. Likewise, in this case, we find that juror Cheatom's litigation experiences with her landlord-tenant disputes has no bearing on the personal injury cause of action alleged and the nondisclosure shows no inability on her part to fairly evaluate the evidence in the case. Any nondisclosure in this case did not prejudice the Aliffs.

Resolution of this point renders moot Mr. Cody's remaining points on appeal and they will not be addressed. The circuit court's order granting the Aliffs' a new trial is reversed and the cause is remanded for consideration of the remaining points of error alleged in the Aliffs' motion for new trial. *See Boyer v. Grandview Manor Care Center,* 793 S.W.2d 346, 347–48 (Mo. banc 1990) (case remanded to consider defendants' unresolved claims of error raised in their motion for judgment notwithstanding the verdict); *Noll v. Shelter Ins. Companies,* 774 S.W.2d 147, 149–51 (Mo. banc 1989) ("The trial court, following remand, [has] the power to determine all unresolved issues and enter final judgment.").

All concur.