Edward Devon BANKS and Florence
Louise Banks, Respondents,

v.

VILLAGE ENTERPRISES, INC., A
Kansas Corporation, d/b/a Kentucky
Fried Chicken of Brookfield, Mo., Ap-
pellant.

No. WD 57244.

Missouri Court of Appeals,
Western District.

Dec. 5, 2000.

William Stuart Lewis, Trenton, for appellant.

David Allen Masters, Macon, for respondent.

Before Presiding Judge LOWENSTEIN, Judge LAURA DENVIR STITH and Judge NEWTON.

LAURA DENVIR STITH, Judge.

Village Enterprises, Inc., d/b/a Kentucky Fried Chicken (hereinafter "KFC"), appeals the denial of its Motion for New Trial in a case arising out of a choking incident at its restaurant in Brookfield, Missouri. Respondents Edward Banks and Florence Banks were customers at the restaurant when Mr. Banks choked on a piece of "trussing cord" that the restaurant had left in his chicken. Mr. Banks sued KFC for personal injuries, including depression and post-traumatic stress disorder he allegedly suffered due to the choking incident. Mrs. Banks sued for loss of consortium. On January 29, 1999, the jury returned a verdict for Mr. & Mrs. Banks. The jury assessed 90% fault to KFC, and awarded $150,000 to Mr. Banks, and $50,000 to Mrs. Banks. The trial court entered judgment in accordance with this verdict, awarding $135,000 to Mr. Banks, and $45,000 to Mrs. Banks.

KFC filed its Motion for New Trial on March 1, 1999, alleging that certain jurors failed to disclose relevant information in response to questions on voir dire, resulting in prejudice. It further alleged error in that the court below should have granted a mistrial due to improperly asked "insurance questions" posed by counsel for the Banks during voir dire. Finally, KFC alleged that the trial court erred in allowing an employee of the KFC in Brookfield to testify, over KFC's objection, that she had told Mr. Banks that the company would probably pay any medical bills he incurred as a result of the choking incident. The trial court denied KFC's motion on May 11, 1999. KFC appeals, arguing that the trial court abused its discretion in failing to grant a new trial for the reasons alleged.

Finding no abuse of discretion in any of the respects alleged, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The evidence at trial, considered in the light most favorable to the verdict, was as follows:

On September 1, 1994, Respondents Edward and Florence Banks were customers at the KFC restaurant in Brookfield, Missouri, owned by Appellant KFC. While eating his meal, Mr. Banks began to choke. He went to Pershing Memorial Hospital, where the doctors determined that he had choked on a piece of "trussing cord" that had been used to bind the chicken he had eaten at KFC that day. That evening, Mr. Banks returned to the KFC and showed the length of cord to Deana Chowning, the assistant shift manager of the restaurant. Ms. Chowning told Mr. Banks that the company would probably pay for any medical bills stemming from the choking incident.

Mr. and Mrs. Banks filed a suit for damages against KFC on September 8, 1997, in the Circuit Court of Linn County, Missouri. They alleged that Mr. Banks choked as a result of KFC's negligence and serving of a defective product, and that this caused him to later develop depression and post-traumatic stress syndrome. Further, Mrs. Banks alleged that the incident caused her a loss of consortium.

At the beginning of voir dire, the court introduced Mr. and Mrs. Banks and asked: "[I]s anyone acquainted with them or had any social, business or professional relationships with them?" Later, counsel for Mr. and Mrs. Banks asked: "[s]o I take it then that there is no one else here who has had a prior relationship of any type even just an acquaintance with Mr. or Mrs. Banks?" No jurors responded that they were acquainted with the Banks.

During voir dire, counsel for the Banks also asked the venire whether they or their

immediate family had experienced a choking incident:

> [P]art of the evidence in this case will be that Mr. Banks ... had a choking incident.... Now, what I need to know is whether or not any of you or any member of your immediate family have ever had a choking incident ... which has caused you or your relative to seek medical treatment or this incident was such that a Heimlich maneuver was necessary or performed. Is there anyone who had such an experience or any member of your immediate family that has had such an experience?

Venireperson Seek was the only person to answer affirmatively. He stated that his son had suffered a choking incident during which his wife performed the Heimlich maneuver.

Counsel for KFC further asked the panel members whether they had experienced certain types of depression:

> Mr. Banks alleges that he suffered severe mental problems or depression, post traumatic stress disorder and even some symptoms of obsessive compulsive disorder as a result of this choking incident ... what I need to know on behalf of the defendant is whether or not any of you or any member of your immediate family have had a similar problem?

Again, no one responded that they or their immediate family had experienced a similar problem.

Plaintiff's counsel also asked the jurors the "insurance question" toward the end of his voir dire. Prior to trial, the court had ruled that it would permit counsel for Mr. and Mrs. Banks to ask "if any panel member or member of their family is an employee, agent, officer or director of the insurance companies involved which is (sic) American States and Safeco." The court also ruled that, if an affirmative answer to this question were given by any panel member, it would allow one "follow-up" question by counsel, as to whether the panel member's affiliation with either insurance company would affect his or her ability to render an impartial verdict. Accordingly, well into plaintiff's counsel's voir dire examination, he asked:

> Does anybody here, you or your family member, [work as] an employee or an agent or an officer or a member of the Board of Directors of American States Insurance Company or Safeco Insurance Company?

Counsel's question clearly and specifically asked only whether the venireperson or a member of his or her family was an employee, officer, agent or member of the Board of the two mentioned insurance companies, and no one identified themselves as falling into any of these categories. Counsel did not ask whether any venirepersons were policyholders of either company. Nonetheless, two venirepersons responded that they were policyholders of American States Insurance Company. Since these two jurors had responded to the insurance question, counsel for the Banks asked them the approved follow-up question: "[w]ould that in any way you think influence your decision-making in this case?" Both panel members answered no, and the insurance issue was dropped. Counsel for Mr. & Mrs. Banks asked the panel several more questions unrelated to insurance before telling the jurors that these were all the questions he had at that time, and the court called a recess. During the recess, counsel for KFC objected to the insurance question posed by counsel for Mr. & Mrs. Banks on the ground that it stressed the insurance issue because it was asked near the end of counsel's voir dire questions. Counsel for Mr. & Mrs. Banks offered to ask more questions before KFC began its questioning, but counsel for KFC argued that this would do nothing to cure the error, because the questions had already been emphasized by taking a break shortly after they were asked. The court overruled the objection, noting that the question asked was proper, and that counsel for Mr. & Mrs. Banks had, in fact, asked other questions after the insurance question.

On January 29, 1999, the jury returned a verdict in favor of Mr. & Mrs. Banks. The jury assessed 90% fault to KFC, and awarded $150,000 to Mr. Banks and $50,000 to Mrs. Banks. The court entered judgment in accordance with the jury's verdict on February 9, 1999, awarding $135,000 to Mr. Banks, and $45,000 to Mrs. Banks.

In its motion for new trial KFC alleged, in pertinent part, that jurors Leppin, Thomas, Brantnor, and Bagley failed to disclose relevant information in response to questions on voir dire, and that this resulted in prejudice to KFC. Further, it alleged that the trial court erred in refusing to grant a mistrial due to what it claimed was the improper timing, wording, and number of "insurance questions" posed by counsel for the Banks during voir dire. Finally, KFC alleged that the trial court erred in allowing the KFC restaurant's assistant shift manager, Ms. Chowning, to testify, over objection, that she had told Mr. Banks that the company would probably cover his medical bills incurred from the choking incident. On May 11, 1999, the trial court entered an order overruling KFC's motion for new trial. This appeal follows.

## II. VOIR DIRE NONDISCLOSURES

In its first point on appeal, KFC contends that it should have been granted a new trial because several jurors failed to disclose relevant, requested information sought during voir dire and that, as a result, it suffered prejudice. Specifically, KFC contends that Juror Marilee Leppin failed to disclose that she has a family member who suffered a choking incident that resulted in a mental disorder; that Juror Phillip Bagley failed to disclose that his in-laws were acquainted with the plaintiffs, Mr. and Mrs. Banks; and that Jurors Margaret Thomas, Phyllis Brantnor and Marilee Leppin failed to disclose that members of their families suffered from mental disorders.

The constitutional right to a fair and impartial jury dictates that, in the trial of a cause, "[b]oth parties are entitled to unbiased jurors whose experiences, even innocently and reasonably undisclosed, will not prejudice the resolution of the cause." *Wemott v. Tonkens,* 26 S.W.3d 303, 307 (Mo.App. W.D.2000). To this end, "[d]uring the voir dire examination, each juror has the duty to fully, fairly and truthfully answer each question asked so that determinations may be made about each juror's qualifications and counsel may make informed challenges." *Id.* Accordingly, a prospective juror's failure to disclose material information during voir dire upon a showing that such failure also resulted in bias and prejudice to the complaining party will mandate a new trial. *Williams By and Through Wilford v. Barnes Hosp.,* 736 S.W.2d 33, 37 (Mo. banc 1987).

In determining whether juror non-disclosure of information is prejudicial, the court must first determine whether the nondisclosure was intentional or unintentional. *See, e.g., Williams,* 736 S.W.2d at 36; *Brines By and Through Harlan v. Cibis,* 882 S.W.2d 138, 139 (Mo. banc 1994). "Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable." *Wemott,* 26 S.W.3d at 307, *quoting, Williams,* 736 S.W.2d at 36. Unintentional nondisclosure, rather, exists where, for example, "the experience forgotten was insignificant or remote in time, or where the venire man reasonably misunderstands the question posed." *Id.*

"Nondisclosure, whether intentional or unintentional, can occur only after a clear question is asked on voir dire." *Brines,* 882 S.W.2d at 139. Accordingly, courts have recognized that counsel can cause confusion among venire persons when he or she "narrow[s] the focus of the [voir

dire] questions." *Williams,* 736 S.W.2d at 37 (finding that jurors' answers to counsel's questions during voir dire were reasonably calculated to answer the question asked, because counsel consistently narrowed the focus of the questions to actions involving personal injuries, nothing more; and this resulted in a reasonable inability to comprehend the information solicited by the questions asked on voir dire); *Heinen v. Healthline Management, Inc.,* 982 S.W.2d 244, 249 (Mo. banc 1998) (because counsel indicated to venirepersons that he did not seek any information concerning "divorces or child custody" cases when he asked whether any prospective juror had been "sued," it was reasonable for venireperson to omit any mention of domestic litigation to which he had been a party).

■ A trial court's findings concerning whether a juror has failed to disclose relevant information, and concerning whether a juror's explanation for any nondisclosure is reasonable, are accorded great weight, and will not be disturbed on appeal unless the trial court abused its discretion. *Brines,* 882 S.W.2d at 139; *Jackson v. Watson,* 978 S.W.2d 829, 832–33 (Mo.App. W.D.1998). Moreover, where, as here, the trial court denied the party's motion for new trial without making specific findings, we consider all findings necessary to the result to be implicit in the trial court's decision. *Rogers v. Bond,* 880 S.W.2d 607, 610 (Mo.App. E.D.1994). We apply these rules to the three voir dire nondisclosure errors alleged by KFC.

### A. Acquaintance with Mr. and Mrs. Banks.

■ Mr. and Mrs. Banks were the plaintiffs in this action. Accordingly, during voir dire the court asked the venire panel, "[I]s anyone acquainted with them or had any social, business or professional relationships with them?" Later, counsel for Mr. and Mrs. Banks asked: "[s]o I take it then that there is no one else here who has had a prior relationship of any type even just an acquaintance with Mr. or Mrs. Banks?" No jurors responded. But, after trial, KFC discovered that while the trial was under way Juror Bagley had chanced upon his in-laws dining with Mr. and Mrs. Banks at a local restaurant, and had mentioned this encounter during jury deliberations. KFC alleges that Juror Bagley's failure to disclose his in-laws' acquaintance with Mr. and Mrs. Banks constituted intentional nondisclosure requiring a new trial. We disagree.

Most basically, counsel's question asked only whether any members of the venire were acquainted with the plaintiffs, Mr. or Mrs. Banks. It did not ask whether any of their relatives were acquainted with them. It is not contended even now that Juror Bagley was personally acquainted with the plaintiffs. Counsel alleges only that his parents-in-law were acquainted with them. Thus, even had Juror Bagley been aware of that acquaintance during voir dire, the question asked did not call for him to reveal it. Moreover, during the post-trial hearing on this issue, Juror Bagley testified that at the time of voir dire he was not aware that his in-laws were acquainted with the plaintiffs. He did not learn that they were until he saw the two couples eating together during the trial, after voir dire was over. While he was generally aware that his in-laws had acquaintances named Banks, he had had never met that family and did not realize that they were the same Banks as the plaintiffs.

The trial court was free to believe Juror Bagley's explanation and did so here. Since at the time of voir dire Juror Bagley was not acquainted with plaintiffs and was not aware of his in-laws' acquaintance with them, he simply did not fail to disclose relevant information requested by KFC, for one cannot disclose or fail to disclose a matter of which one is unaware. In such a case, we do not even reach the issue whether nondisclosure was intentional, for there simply was no nondisclosure at all, in that, if a venireperson reveals everything that is known and relevant at the time of the voir dire question, and indeed, accu-

rately responds to the question as it is posed, the venireperson "has disclosed everything that the voir dire question requires and no nondisclosure of any kind [has] occurred." *Heinen,* 982 S.W.2d at 248. *Accord, McHaffie By and Through McHaffie v. Bunch,* 891 S.W.2d 822, 829 (Mo. banc 1995).

To illustrate, in *Heinen,* the defendant charged that Juror Hellon failed to disclose his involvement in a lawsuit, although the venire panel had been asked, on voir dire, whether anyone on the panel had ever "been sued," or whether anyone had been a plaintiff, that is, "the one that filed the lawsuit." *Heinen,* 982 S.W.2d at 248. Evidence adduced at the post-trial hearing on the issue indicated that at the time of voir dire, Juror Hellon had no knowledge that a lawsuit had been filed on his behalf nearly eight years before.[1] *Id.* Accordingly, because Juror Hellon had no knowledge of the suit at the time of voir dire, our Supreme Court found that he had "disclosed everything that the voir dire question require[d]," and that "his silence to defendant's question was complete disclosure." *Id.*

Similarly, in *McHaffie,* the venire was asked whether "any of [them had] been involved in making a claim against another individual, filing a lawsuit?", and whether they had "consulted with a lawyer or actually filed a lawsuit?" 891 S.W.2d at 829. Juror Porter did not respond to this question. Defendants alleged juror nondisclosure when it was later learned that her daughter had long before been involved in an accident, as to which no lawsuit was ever filed, and from which her daughter had received a settlement. Our Supreme Court rejected the argument, noting that "[t]he question defines 'claim' by 'filing a lawsuit' and appears to be addressed to suits involving venirepersons rather than family members." *Id.* Because Juror Porter herself was not directly involved in her daughter's case, and further because no lawsuit was ever filed before the case

settled, the Supreme Court concluded that there was no failure to disclose on the part of Juror Porter. *Id.*

▪ These cases, distilled to their essence, indicate that in order to successfully advance a claim of juror nondisclosure, counsel must have asked a question reasonably calculated to elicit the allegedly withheld information. If the juror's answer or lack thereof reasonably responds to the voir dire question as it was posed, and it reveals all known and relevant information, there has been no juror nondisclosure, intentional or otherwise. No further inquiry is necessary.

These principles are applicable here. Mr. Bagley was not asked about his family's relationship with the Banks, and in any event did not know of that relationship at the time of voir dire and was not himself acquainted with the Banks. Accordingly, he did not fail to disclose relevant information, and the trial court acted well within its discretion in refusing to grant a new trial on this basis.

### B. *Choking Incident.*

During voir dire, counsel for KFC also asked the venire panel members the following question concerning their experience with, or knowledge of, choking injuries:

> [P]art of the evidence in this case will be that Mr. Banks ... had a choking incident. ... Now, what I need to know is *whether or not any of you or any member of your immediate family have ever had a choking incident* ... which has caused you or your relative to seek medical treatment or this incident was such that a Heimlich maneuver was necessary or performed. Is there anyone who had such an experience or any member of your immediate family that has had such an experience?

(emphasis added). Only one venireperson, Mr. Seek, answered, stating that his son had suffered a choking incident, during

---

1. Although Juror Hellon had received a small

settlement, there was no formal discovery.

which his wife performed the Heimlich maneuver. KFC alleges that Juror Leppin should also have responded to the question by revealing that her husband's nephew's daughter had suffered a choking incident which resulted in the girl's development of an eating disorder and depression. At the post-trial hearing, Juror Leppin confirmed that she had been vaguely aware of the incident involving her husband's nephew's daughter prior to the trial, but that because she and her husband were not close to this relative, it was really her husband's relative, and the girl lived "far away and did not have much contact with them," that she did not even think of the incident in response to KFC's voir dire question.

■ On its face, the question posed by counsel for KFC does not appear to be reasonably calculated to elicit information about relatives who are only distantly related by marriage, as was the case with Juror Leppin's husband's nephew's daughter. In particular, although counsel at one point made a single reference to "relatives," he then twice clarified that he only wanted information concerning the venirepersons or members of the venirepersons' "immediate family." Generally, for the purposes of a voir dire examination, the phrase "immediate family" refers to one's parents, wife or husband, children, and brothers and sisters, and does not include extended or collateral relatives beyond these degrees of relation. *Small v. Missouri State Highway and Transp. Comm'n*, 815 S.W.2d 495, 497 (Mo.App. E.D.1991), *citing*, BLACK'S LAW DICTIONARY 750 (6th ed.1990). And, although we held in *Strickland By and Through Carpenter v. Tegeler*, 765 S.W.2d 726 (Mo.App. W.D.1989), that the phrase "immediate family" as used during voir dire in that particular case included a venireperson's spouse's niece or nephew, we did so only because counsel in that case had specifically advised the venire panel that he would be using the term "immediate family" to mean not just family members, but also to refer to relatives, step-siblings and adopted relatives and even close friends. *Id.* at 727. Clearly this is not the ordinary meaning of "immediate family," and this Court held that in light of this definition and the fact that other panel members had identified extended relatives in response to the question, the venireperson in question should have done so also. *Id.* at 728.

Here, however, counsel for KFC made no express effort to expand the commonly understood meaning of the term "immediate family." Further, only one panel member responded to KFC's question, and that person offered information about a person who was within his immediate family under any definition of that term his son. Thus, nothing said by the other jurors below would have alerted Juror Leppin that the term "immediate family" was being used other than in its ordinary sense.

Based solely on what occurred during voir dire, we would thus be inclined to hold that Juror Leppin simply did not engage in nondisclosure of any type since counsel only asked the venirepersons to tell him about choking incidents involving themselves or their immediate families, and a juror's husband's nephew's daughter clearly falls outside the scope of that question. Where a juror has "disclosed everything that the voir dire question require[d]," *Heinen*, 982 S.W.2d at 248, no nondisclosure has occurred.

But, during the post-trial hearing, Juror Leppin's testimony was inconsistent concerning whether she deemed her husband's nephew's daughter to be a member of her "immediate family." Initially, when asked whether she remembered telling the other members of the jury that she had a relative who had a choking incident, she said she remembered telling them that her husband had a relative who did. When repeatedly asked whether that did not make the niece her relative, she said it made her a relative by marriage. When asked why she did not disclose the incident

in voir dire, she said that she did not even remember the question and knows she never thought of the incident during voir dire. Indeed, she testified that "she would not even have thought about" her husband's nephew's daughter when asked whether a member of her immediate family had ever suffered a choking incident, that the girl did not live around them, and that she did not even know if the girl had received medical treatment. Later, however, in response to being asked whether she considered her "husband's nephew's daughter" to be a member of her "immediate family," Juror Leppin responded "yes."

The court below could have believed from consideration of Juror Leppin's testimony on this issue as a whole that she misspoke or misunderstood the question asked of her when she said that she thought her husband's nephew's daughter was part of her immediate family, in light of her earlier statements. In any event, she merely testified to what she considered to be within the term "immediate relative" at the post-trial hearing, following KFC's counsel's discussion of what he meant by the term. She did not state that she thought at the time of the voir dire that her husband's nephew's daughter came within the definition of immediate family. To the contrary, she clearly said that she was not close to the girl, only knew of the incident vaguely through hearsay, and did not even think of it during voir dire. The court was free to believe this testimony, and to conclude that the juror did not intentionally fail to disclose requested information.

■■■ As noted above, "[w]hen nondisclosure is not intentional, a new trial is not required unless prejudice is shown to exist from the nondisclosure which may have influenced the verdict." *Aliff v. Cody*, 987 S.W.2d 439, 443–44 (Mo.App. W.D.1999) (recognizing that counsel's questions may reasonably narrow the scope of information sought, resulting in unintentional failure to disclose relevant information.) The party alleging prejudice

bears the burden of proving that the nondisclosure "may have influenced the verdict." *Id.* at 444. It is well-settled that "an unintentional failure to disclose information not connected with the case or not bearing on the prospective juror's ability to fairly evaluate the evidence does not necessarily show prejudice on the part of the juror." *Williams*, 736 S.W.2d at 37. "Prejudice is a determination of fact for the trial court, its finding to be disturbed on appeal only for abuse of discretion." *Id.* KFC offers no reason why the fact that Juror Leppin's husband's nephew's daughter had some sort of choking incident would have disqualified her from serving on the jury. Indeed, we note that KFC did not try to disqualify Mr. Seek, who did disclose that his son had suffered a choking incident, but rather opposed plaintiffs' successful attempt to disqualify Mr. Seek on other grounds.

■■■ Here, the trial court acted well within its discretion in determining that the nondisclosure was unintentional and non-prejudicial.

### C. Psychological Conditions.

Finally, KFC alleges that Jurors Leppin, Thomas, and Brantnor were also guilty of nondisclosure because they sat silent when counsel for KFC asked the panel members whether they or members of their immediate families had experienced problems similar to the depression experienced by Mr. Banks as a result of the choking incident. The question KFC asked was:

> Mr. Banks alleges that he suffered severe mental problems or depression, post traumatic stress disorder and even some symptoms of obsessive compulsive disorder as a result of this choking incident ... what I need to know on behalf of the defendant is whether or not any of you or any member of your immediate family have had a similar problem?

KFC alleges that Juror Leppin improperly failed to disclose the fact that her husband's nephew's daughter had a chok-

ing incident from which she developed mental disorders. Again, we note that that the question called for venirepersons to reveal whether members of their "immediate family" suffered such incidents. As noted previously, Juror Leppin's distant relative would not normally be considered "immediate family," as the term is commonly understood, and thus the question on its face did not ask for the information which KFC now alleges she should have disclosed. In any event, the court was entitled to believe her explanation that she did not think of the incident during voir dire because the relationship was so remote, and KFC has failed to show how any prejudice could have arisen due to the unintentional failure to disclose this incident involving the juror's husband's nephew's daughter.

■ Jurors Thomas and Brantnor, however, arguably should have responded to this question. Juror Thomas testified, at the hearing on KFC's motion for new trial, that her son suffered from manic depression and that she was aware of his condition at the time of voir dire. Juror Brantnor testified at the same hearing that her husband had suffered from depression for several years prior to the trial for which he took medication. Neither juror disclosed this information during voir dire. Both jurors testified at the post-trial hearing, however, that during voir dire they simply did not interpret the question to ask whether they or their immediate family had suffered from depression generally, but rather whether any panel member, or any member of his or her immediate family, suffered such problems *as a proximate result of a choking incident* .

This ambiguity was brought into sharp relief at the post-trial hearing in this case, during which Jurors Brantnor and Thomas testified as to their understanding of the question as it was posed. During this hearing, Juror Brantnor was asked again, verbatim, the question as it was originally posed during voir dire:

Q: Now, this question was asked [during voir dire]. I'm going to ask you putting yourself back there in that Voir Dire panel on that day when you were being asked questions, the truthful answer to this question would be what? ... 'Mr. Banks alleges that he suffered severe mental problems or depression, post traumatic stress disorder, and even some symptoms of excessive compulsive disorder as a result of this choking incident at the KFC in Brookfield and what I need to know on behalf of the defendant is whether or not any of you or any member of your immediate family have had a similar problem?' Now, what is the answer to that question?

A: No.

On re-direct examination, counsel for KFC, presumably in an attempt to emphasize perceived inconsistencies in her testimony, asked Juror Brantnor:

Q: Ma'am, now, you just said that your husband had suffered from depression.

A: He does, but not from a choking incident.

Q: Well, the question was

THE COURT: The question speaks for itself.

Juror Thomas, who indicated that her son suffered from manic depression, was also examined by counsel for KFC:

Q: Now, during the course of the Voir Dire when I asked you questions and all the other prospective questions and when Mr. Masters asked questions of all the jurors did you disclose the fact that your son suffered from that condition during the Voir Dire process?

A: No. I didn't realize there was anybody asked me if there was any depression in my family.

She also, like Juror Brantnor, was asked, verbatim, the question asked during voir dire:

Q: Question, ma'am, now mind you I'm taking you back to when were you in Voir Dire . . . at that time . . . [the] question was asked . . . "Mr. Banks alleges that he suffered severe mental problems or depression, post traumatic stress disorder and even some symptoms of excessive compulsive disorder as a result of this choking incident at KFC in Brookfield and what I need to know on behalf of the defendant is whether or not any of you or any member of your immediate family have had a similar problem." Now, considering the whole question, how would you answer it accurately when you were in the Voir Dire? . . .

A: If you mean that we had had the same problem from choking stuff causing manic depression, no.

Q: Okay. Thank you. Put it another way. As far as you know his mental condition, illness or disorder, whatever it might be, what you believe is manic depression, as far as you know it doesn't have anything to do with choking?

A: No.

Q: And wasn't caused as far as you know by choking?

A: No.

The question as asked did not clearly ask for jurors to reveal all cases of depression in their family. It was ambiguous, and could reasonably be interpreted to ask only about mental disorders caused by choking rather than about any mental disorder. In fact, the qualifications included in the question indicate that this may well be all that counsel was intending to inquire about at the time the question was asked during voir dire. In any event, the trial court in its discretion could have believed the jurors' explanation that they, in fact, interpreted the question to ask only about depression resulting from choking incidents, not about all types of depression. Given the jurors' interpretation of the question, their responses were accurate.

Indeed, as the trial court said "[t]he question speaks for itself." The trial court was within its discretion in finding that the jurors reasonably interpreted the question and did not intentionally fail to disclose relevant information. *See Aliff v. Cody,* 987 S.W.2d 439, 443 (Mo.App. W.D.1999) (recognizing that counsel's questions may reasonably be deemed to narrow the scope of information sought, resulting in unintentional failure to disclose relevant information).

As noted above, when "nondisclosure is not intentional, a new trial is not required unless prejudice is shown to exist from the nondisclosure which 'may have influenced the verdict.'" *Aliff,* 987 S.W.2d at 444 (internal citations omitted). Here, KFC has directed us to no cases which suggest that it could have successfully challenged jurors Brantnor and Thomas for cause simply because members of their respective families suffered from mental disorders, the causes of which were substantially different than Mr. Banks' choking incident. KFC relies on *Rodenhauser v. Lashly,* 481 S.W.2d 231 (Mo. banc 1972), but in *Rodenhauser,* the jurors were found to have *intentionally* withheld relevant information, resulting in a presumption of prejudice, which is not the case here. *Id.* at 234. We defer to the trial court's discretion in determining that no prejudice occurred here.

For these reasons, KFC's first point is denied.

## IV. INSURANCE QUESTION

KFC also asserts that the trial court committed reversible error during voir dire because it allowed the Banks' counsel to unduly emphasize the existence of KFC's liability insurance by asking a follow-up question not authorized by the court, by asking the insurance question too near the end of voir dire, and by asking the question as to both American States and Safeco insurance companies. "The 'control of the voir dire is within the dis-

cretion of the trial court [and] only an abuse of discretion and likely injury will justify reversal.'" *Pollard v. Whitener,* 965 S.W.2d 281, 286 (Mo.App. W.D. en banc 1998). "An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the court, and is so arbitrary and unreasonable that 'it shocks the sense of justice' and indicates a lack of careful consideration." *Id.*

 It is generally improper to inject the issue of liability insurance into an action for damages, and such an injection of insurance "can constitute reversible error, particularly if done so in bad faith." *Taylor v. Republic Automotive Parts, Inc.,* 950 S.W.2d 318, 321 (Mo.App. W.D.1997). But "not every reference to insurance constitutes reversible error or requires the discharge of a jury." *Id.* In particular, in *Ivy v. Hawk,* 878 S.W.2d 442 (Mo. banc 1994), our Supreme Court held that a party is entitled to ask at least a preliminary insurance question during voir dire, stating:

> 'The rule is settled in this state that a plaintiff is entitled to qualify the jurors as to their relations, if any, with insurance companies interested in the result of the trial.' [citation omitted] The trial court has no discretion to deny a party the right to ask the preliminary 'insurance question' if the proper foundation is laid.

*Id.* at 444.

 A plaintiff can establish a proper foundation for the insurance question by inquiring of the defendant as to the name of its liability insurer on the record and prior to voir dire, and then limiting its insurance question to that insurer. *Id.* Here, in the argument portion of its brief, KFC says that Mr. & Mrs. Banks improperly were permitted to ask the jurors about their relationship with two insurance companies, and that this "improperly indicated to the jurors that there was plenty of insurance to satisfy any judgment they may render." Unfortunately, KFC's Point

Relied On does not adequately raise this point. It states, in its entirety:

> THE TRIAL COURT ERRED IN REFUSING TO GRANT APPELLANT'S REQUEST FOR A MISTRIAL BECAUSE OF RESPONDENTS' IMPROPER VOIR DIRE QUESTIONING REGARDING APPELLANT'S LIABILITY INSURANCE IN THAT RESPONDENTS' VOIR DIRE QUESTIONING UNDULY AND IMPROPERLY EMPHASIZED THE EXISTENCE OF APPELLANT'S LIABILITY INSURANCE DUE TO THE TIMING, WORDING AND NUMBER OF QUESTIONS POSED WHICH THEREBY PREJUDICED THE APPELLANT AND RESULTED IN AN EXCESSIVE VERDICT IN FAVOR OF RESPONDENTS.

This point does not adequately (if at all) raise the issue of asking the question as to two insurers rather than one, and so does not preserve the issue for appeal. Rule 84.04; *Coleman v. Gilyard,* 969 S.W.2d 271, 274 (Mo.App. W.D.1998) (insufficient Point Relied On, which cannot be understood without resorting to the record or the argument section of the brief, preserves nothing for appellate review).

 Even were the issue raised in the Point Relied On, KFC's objection that the jury might have concluded from the question that there was a lot of insurance money available does not constitute an objection to the foundation for the Plaintiffs' inquiry about two insurers, and so does not preserve the foundation issue recognized in *Ivy.* In any event, we note that where two insurers are involved, then clearly it is proper to ask the question about both insurers. There is no precedent for requiring plaintiff to pick just one of the two insurers to mention on voir dire. Here, Mr. & Mrs. Banks clearly did establish a basis for asking about two insurers. Counsel for the plaintiffs indicated to the court before voir dire that the policy held

by KFC was issued by American States, and that American States had subsequently been acquired by Safeco. The judge agreed that counsel could ask the panel members about their possible affiliation with both companies. We see no error in this ruling.

KFC also raises a question as to the way in which the insurance question was asked. *Ivy* establishes a particular procedure which should be followed in asking the insurance question and any follow-up questions once it is determined that, as here, a proper foundation has been laid. Specifically, *Ivy* held that counsel should first get the judge's approval of the proposed question outside the hearing of the jury panel. *Ivy*, 878 S.W.2d at 445. Second, the proponent must initially ask only one "insurance question." *Id.* Third, the question must not be the first or the last in a series of questions so as to avoid unduly highlighting the question to the jury panel. *Id.*

The issue before us is whether the Banks' counsel adequately followed the procedures set out in *Ivy*. It is undisputed that, prior to voir dire, counsel for Mr. and Mrs. Banks properly notified the court that he intended to ask an "insurance question" of the venire panel. KFC objected to asking any question and to the form of the question proposed, but the court ruled that an insurance question could be asked. It approved a question inquiring whether "any panel member or member of their family is [an] employee, agent, officer or director of the insurance companies involved which is (sic) American States and Safeco." It told counsel not to ask the prospective jurors whether they held policies of these companies, presumably because the policies were stock and not mutual insurance policies. The court also indicated that if any of the panel members responded affirmatively to the first question, it would allow one follow-up question which asked whether "that relationship [will] prohibit [the panel member] from rendering an impartial verdict."

Accordingly, counsel for Mr. and Mrs. Banks asked the panel: "Does (sic) anybody here, you or any family member, an employee or an agent or an officer or a member of the board of directors of American States Insurance Company or Safeco Insurance Company?" No one answered affirmatively to the actual question as posed. However, although the question clearly did not ask whether any members of the venire held policies of either company, two panel members said that they were policyholders of American States Insurance Company. Although this was not the issue counsel had inquired about, counsel later testified that he felt it would look strange and attract attention to the question if he failed to ask any follow-up question. Accordingly, he asked the jurors the follow-up question approved by the court, asking "would that in any way influence your decision making in this case?" Both panel members answered no. Counsel for Mr. & Mrs. Banks asked the panel several more questions unrelated to insurance before concluding his portion of voir dire.

■■■■ KFC argues that reversible error occurred when counsel for Mr. & Mrs. Banks asked the approved "follow-up" question since the panel members who responded to the "insurance question" had said only that they were policyholders of the insurer, not that they were officers, agents, employees, or directors of the company. We disagree. First, the Point Relied On, quoted above, fails to sufficiently raise the issue of error in permitting a follow-up question to preserve it for appeal. Rule 84.04; *Coleman*, 969 S.W.2d at 274. Second, it is well-settled that the trial court is better suited than an appellate court to judge the effect that "insurance questions" have on a jury panel, *Taylor*, 950 S.W.2d at 321, and that "the decision of whether to grant a mistrial when such a situation arises is one that is left to the sound discretion of the trial court, and only where a manifest abuse of discretion occurs will the appellate court disturb this decision." *Id.* Here, the trial

court specifically considered the claim that error occurred from asking the follow-up question, and determined that it did not.

Third, KFC does not point us to any case indicating that a single, approved follow-up question can result in prejudice, even when answered by policyholders rather than insurance company employees or officers. Our own research has found to the contrary. In *Morris v. Duker*, 414 S.W.2d 77 (Mo.1967), our Supreme Court addressed the converse question: whether it was error to *prohibit* counsel from asking whether any members of the venire were policyholders of the insurer. The court held that it was not error to preclude such a question, but it further ruled that "[i]f the inquiry had been allowed it would have been proper. *McCollum, supra* [185 S.W.2d 48 (Mo.App.1944) ]. The better practice would be to allow such an inquiry. If a venireman is a policyholder the plaintiff has a right to inquire whether in view of that fact he could try the case fairly. *McCollum, supra.* The refusal to permit inquiry ... however, does not constitute an abuse of discretion requiring us to upset a verdict and judgment...." *Morris,* 414 S.W.2d at 81. Following *Morris,* we find that the court below did not abuse its discretion in finding that no prejudice resulted from the fact that counsel asked the approved follow-up question of jurors who had responded that they were policyholders of one of the mentioned insurers.

▇▇▇ KFC also argues that reversible error occurred because the Banks' counsel asked the insurance questions near the end of voir dire, thus emphasizing them and violating the requirement of *Ivy* that the insurance question not be either the first or last question asked in a series so as to avoid unduly highlighting it. *Ivy,* 878 S.W.2d at 445. Again, the Point Relied On does not state this point sufficiently to preserve it for review. Rule 84.04; *Coleman,* 969 S.W.2d at 274. In any event, the Banks did not, in fact, ask the insurance questions first or last in a series. And, while counsel did ask them quite near

the end of his voir dire questions, KFC can point to no case holding that this was error. Moreover, the record shows that, when counsel for KFC raised this issue after counsel for the Banks had indicated that he had no more questions at that point and the court took a break, counsel for Mr. & Mrs. Banks offered to ask more questions before KFC began its questioning. KFC argued that this would not cure the error because the questions had already been emphasized by taking a break shortly after they were asked. The court considered the objection that only a few additional questions were asked before the break and ruled, "I don't know how much influence that has on a jury, but there were questions after and I think the question he asked was proper.... I think the way he handled it was proper ... I'm going [to] overrule your motion for mistrial." We cannot say that this constituted an abuse of the trial court's broad discretion in this area. *See Taylor,* 950 S.W.2d at 321.

▇▇▇ Finally, we note that, although KFC's Point Relied On does state in conclusory fashion that the "insurance questions" resulted in an excessive verdict, the argument portion of the brief does not discuss or explain this claim, and therefore this issue is deemed abandoned. *See Coleman,* 969 S.W.2d at 273. (arguments raised in the points relied on portion of an appellate brief which are not supported in the argument portion of the brief are deemed abandoned and preserve nothing for appellate review).

For these reasons, KFC's Point II is denied.

## V. STATEMENT KFC WOULD PROB-ABLY PAY MEDICAL BILLS

KFC finally contends that the trial court erred in allowing Plaintiff to ask Deana Chowning, the assistant shift manager at the KFC in Brookfield at the time of the incident, about a statement she made to Mr. Banks concerning whether KFC would

probably pay his medical bills stemming from the choking incident.

Specifically, prior to trial, KFC asked the court to prohibit Plaintiffs' counsel from asking Ms. Chowning questions about whether she had told Mr. Banks that KFC would probably pay his medical bills, and whether her supervisor had authorized her to make this statement. The court declined to so rule prior to trial. KFC renewed its objection when the Plaintiffs' counsel asked Ms. Chowning about this statement at trial, arguing it would constitute evidence of work product and settlement negotiations. The court did not rule on KFC's work product or settlement negotiation objections. Instead, it ruled that what Ms. Chowning's supervisor had told her was inadmissible hearsay inasmuch as the supervisor was deceased and so unavailable to testify. The court further held that the supervisor's statement did not come within the exception to the hearsay rule for admissions of a party-opponent, as the statement was made to an employee of KFC, not to an outsider. The court did not directly rule on the objection to counsel's question as to what Ms. Chowning had herself told Mr. Banks about whether KFC would pay his medical bills. Accordingly, once proceedings returned to open court, the Banks' counsel questioned Ms. Chowning as follows:

Q: Now, Mr. and Mrs. Banks returned that evening and they showed the cord to you?

A: Yes, they did.

Q: And you asked them for the cord but they kept it?

A: No. I told them they could keep the cord.

Q: And did you make any other statements to them?

A: I told them that Kentucky Fried Chicken would probably pay for the hospital bill.

Mr. Lewis: Your Honor, again we would make the same objection.

The Court: It's been asked and answered. Overruled.

Counsel for Mr. & Mrs. Banks did not ask any further questions about the hospital bills. However, in an apparent attempt to obtain evidence that the comment about paying Mr. Banks' bills was part of settlement negotiations, during cross-examination counsel for KFC asked Ms. Chowning whether Mr. Banks had been the one to first bring up the idea of KFC paying his hospital bills. Ms. Chowning answered that she was not sure whether he asked about it, but she knew she had brought it up. On redirect examination, she further responded:

Q: Okay. All right. And when you said there was, I think in answer to a leading question by him, there was a discussion about the bill, all you can recall is that you told him that Kentucky Fried Chicken would probably pay the bill; isn't that right?

A: Yes.

Q: And you don't really recall him ever asking about the bill?

A: I don't know if he brought it up or I had just told him that.

Q: The only thing you remember is that you told him that?

A: Yes.

On appeal, KFC now contends that Ms. Chowning's testimony was inadmissible because her statement constituted an offer of settlement. We disagree. "Admission or exclusion of evidence lies within the sound discretion of the trial court. We will not reverse a decision unless there is a substantial or glaring injustice." *First Nat. Bank of Fort Smith v. Kansas City Southern Ry. Co.*, 865 S.W.2d 719, 739 (Mo.App. W.D.1993).

The general rule is that offers of settlement are not admissible against the offeree to demonstrate liability or an admission of liability, because to do so would discourage settlement negotiations. *Maugh v. Chrysler Corp.*, 818 S.W.2d 658,

660 (Mo.App. W.D.1991). But an offer to pay is not in itself a settlement offer. To show that an offer to pay was part of a valid offer of settlement, and thus inadmissible, the party seeking to exclude it must show that it was made as part of an advancement of opposing claims by the parties, and was part of a negotiation of mutual concessions by both parties. *Id.*

We applied this rule in *Maugh,* in which Chrysler Corporation offered a customer who had purchased a damaged vehicle a new one. Noting that Chrysler had said that "[p]articipation in this program is entirely voluntary," and further that the Maughs would "not be expected to sign any releases of any kind," 818 S.W.2d at 659, *Maugh* found that Chrysler merely made a gratuitous offer to replace the damaged car, and not an offer to "settle" or "compromise," because it did not contemplate any mutual concessions. *Id.* at 661. There was no evidence that Chrysler had asked anything of the plaintiffs, and no request of forbearance of suit was in evidence. *Id.*

■ Here, similarly, there is no indication that mutual concessions were contemplated by the parties when the statement in question was made. To the contrary, Ms. Chowning testified that she could not recall whether Mr. Banks raised the issue of payment of his bills, that she just recalled his bringing in the cord to show her what he had choked on, and that she told him that KFC would probably pay his hospital bill. Her testimony thus did not support KFC's argument that her comment was part of settlement negotiations, and KFC offered no other evidence that the comment was part of settlement negotiations. The trial court thus did not err in failing to exclude the comment on this ground.

■ Finally, we note that, once the court ruled that the question about Ms. Chowning's comment to Mr. Banks was asked and answered, KFC itself brought up the issue during its cross-examination of Ms. Chowning, and further failed to object when counsel for Mr. & Mrs. Banks asked additional questions on the issue in its re-direct examination. KFC thus affirmatively waived any error in permitting the Banks' counsel to question Ms. Chowning about what she had said to Mr. & Mrs. Banks. *See Tate v. Department of Social Services,* 18 S.W.3d 3, 7 (Mo.App. E.D. 2000) ("A party cannot complain on appeal about an alleged error in which that party joined or acquiesced at trial").

■ By so ruling, we do not mean to suggest that the trial court could not have prohibited counsel for Mr. & Mrs. Banks from asking Ms. Chowning about her statement that KFC would probably pay Mr. Banks' hospital bill. This comment does not appear to be relevant to any issue in the case, and the trial court would have been well within its discretion in directing the Plaintiffs' counsel not to ask it, or in sustaining a timely objection to the question. However, we do not believe that the asking of the question constituted plain error, or that it so prejudiced KFC that it required the granting of a mistrial. The Plaintiffs' counsel only asked a single question initially, and it was undisputed that Mr. Banks had swallowed the cord while eating a piece of chicken he had just purchased at KFC. In these circumstances, the assistant shift manager's statement that KFC would probably pay his hospital expenses could not have affected the verdict. KFC's Point III is denied.

For all of the reasons stated above, the judgment is affirmed.

LOWENSTEIN, P.J., and NEWTON, J., concur.