Tina Marie HEINEN, et al.,
Appellants/Cross–
Respondents,

v.

HEALTHLINE MANAGEMENT, INC., et
al., Respondents/Cross–Appellants.

No. 80836.

Supreme Court of Missouri,
En Banc.

Dec. 22, 1998.

Robert H. Pedroli, Daniel J. Gauthier, Robert H. Pedroli & Associates, Clayton, for appellants/cross-respondents.

Kenneth W. Bean, Michelle K. Thompson, Sandberg, Phoenix & Von Gontard, P.C., St. Louis, for respondents/cross-appellants.

DUANE BENTON, Chief Justice.

Plaintiffs prevailed at trial, but the circuit court ordered a new trial due to intentional juror misconduct. Plaintiffs appeal, asserting that the court's order was untimely and erroneous. Defendant Dr. Rudolfo Guillen cross-appeals, arguing that in any event, the motion for new trial was meritorious. This Court granted transfer. *Mo. Const. art. V, sec. 10.* Reversed and remanded.

## I.

Plaintiffs, the survivors of Marlene Heinen, obtained a wrongful death judgment of $375,000 against Dr. Guillen and $125,000 against Lincoln County Memorial Hospital. On August 30, 1996, Dr. Guillen timely filed a motion for new trial (or alternatively for judgment notwithstanding the verdict), alleging that eight jurors, during voir dire, intentionally failed to disclose their personal lawsuits. On November 22, the court held a hearing on the motion. On November 28, the ninetieth day after the filing of the new trial motion, the court was closed for Thanksgiving. On the following Monday, December 2, 1996, the trial court sustained Dr. Guillen's motion for a new trial on the ground of intentional juror misconduct. The threshold issue is whether this ruling was timely.

## II.

The circuit court has 90 days to decide a motion for a new trial. *Rules 78.06; 81.05(a).* After that, any trial court ruling on a motion for new trial is void. *Highland Gardens Nursery, Inc. v. North American Developers, Inc.,* 494 S.W.2d 321, 323–24 (Mo.1973). Rule 44.01(a) provides the method to calculate the last day for ruling on a motion for new trial. *Rule 41.01(a)(2).* Rule 44.01(a) excludes the last day from calculation of this period when it is a "Saturday, Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday."

"Legal holiday" is not defined in Rule 44. To define "legal holiday," plaintiffs propose the definition of "public holiday" in chapter 9 RSMo 1994. While this Court could adopt that definition, it has not. *See Mo. Const. art. V, sec. 5.* Instead, in applying its rules, this Court uses the ordinary meaning as derived from the dictionary.

*See City of St. Louis v. Hughes,* 950 S.W.2d 850, 853 (Mo. banc 1997). "Legal holiday" is "a holiday established by legal authority and characterized by legal restrictions on work and transaction of official business." *Webster's Third New International Dictionary Unabridged* 1290 (1976). A "legal holiday" includes days when "the clerk's office is legally closed." *Bowling v. Webb Gas Company, Inc. of Lebanon,* 505 S.W.2d 39, 40 (Mo. 1974). Otherwise, counsel and parties would have to search for clerks, which is not a "common-sense requirement or an appropriate solution to the problem." *Id.* at 42. Although the *Bowling* Court did once cite chapter 9 RSMo, it held that Rule 44 governs the computation of periods that end on "legal holidays." 505 S.W.2d at 40, 42.

■ Subject to the supervisory authority of this Court, the Chief Justice—as chief administrative officer of the judicial system—supervises the administration of all Missouri courts. *Mo. Const. art. V, sec. 8.* Unless contrary to the general supervisory authority of a higher court, the presiding judge in each circuit has "general administrative authority" over the court and its divisions. *Mo. Const. art. V, sec. 15.3; Gregory v. Corrigan,* 685 S.W.2d 840, 842 (Mo. banc 1985). Presiding judges are also subject to local court rules. *Mo. Const. art. V, sec. 15.1.* Presiding judges shall, within their discretion, address administrative problems as they arise. *See Mo. Const. art. V, sec. 15.3.* The presiding judge's authority, subject to these constraints, includes the power to close courts as necessary, including for inclement weather or legal holidays. *See State v. Stoner,* 395 S.W.2d 192, 193 (Mo.1965) (holding that the day of President Kennedy's funeral, when courts were closed, "constituted a holiday.").

■ Contrary to plaintiffs' policy argument, different circuits may designate different days as "legal holidays" (unless contrary to higher authority or local rule). Trial courts and the districts of the Court of Appeals already have discretion to make inconsistent rules so long as not inconsistent with higher authority. *See Rule 50.01 ; State ex rel. Williams v. Mauer,* 722 S.W.2d 296, 299 (Mo. banc 1986).

## III.

On November 1, 1996, the State Courts Administrator wrote a memorandum to presiding judges, which included:

The Chief Justice has received notification that Governor Carnahan has authorized the closing of executive branch state offices on Friday, November 29, 1996. The Supreme Court and the Office of the State Courts Administrator will also close on that date. Presiding Judges and Chief Judges may use their own discretion whether or not the offices in their circuit or district will need to work to conduct necessary business of the court.

■ The Presiding Judge, in turn, issued a memorandum that the courts of the 22nd circuit would not be open on November 29 "except as may be necessary to conduct certain business of the Court." The trial judge here exercised her discretion that it was not necessary to grant the new trial motion on the day after Thanksgiving. Within the 22nd circuit, November 29 was a "legal holiday" under Rule 44.01(a). *See Bowling,* 505 S.W.2d at 42; *Harmon v. Schultz,* 723 S.W.2d 945, 946 (Mo.App.1987). The case of *Mitchell v. Miner,* 804 S.W.2d 771, 773 (Mo. App.1990), cited by plaintiffs, is inapposite, as are other cases that do not discuss this issue. *· See Pearson v. Carson,* 69 Mo. 569, 570 (Mo. banc 1879); *Holly Investment Company v. Kansas City,* 450 S.W.2d 451, 454 (Mo.App. 1970).

## IV.

Because the courts of the 22nd circuit were closed on November 29 for legal holiday, the new trial order on December 2 was timely. This Court now considers the substance of the order.

■ In this case, the circuit court ordered a new trial for "intentional misconduct by several jurors who concealed the fact that they were parties in prior suits," citing *Williams by Wilford v. Barnes Hosp.,* 736 S.W.2d 33 (Mo. banc 1987). Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) where it develops

that the prospective juror actually remembers the experience or that it was of such significance that the juror's purported forgetfulness is unreasonable. *Id.* at 36.

■ Finding a juror had a "reckless disregard" for the responsibility to disclose information during voir dire is tantamount to intentional nondisclosure. *Id.* at 38. A finding of intentional nondisclosure is tantamount to a per se rule mandating a new trial. *Id.* at 37. However, such findings must be supported by the record. In *Brines by Harlan v. Cibis*, 882 S.W.2d 138 (Mo. banc 1994), the juror was asked, "And at that time [of jury selection] . . . you knew that you had been a defendant in at least the eight lawsuits that we discussed, correct?" The juror responded, "I knew that I had been sued by doctors, yes." *Id.* at 139. This Court held: "Given that the juror understood that he was being asked to reveal any lawsuits against him, that all the lawsuits were of recent vintage, and that he actually recalled the lawsuits, the explanation for his silence was unreasonable." *Id.* at 139.

During voir dire in this case, plaintiffs' counsel asked each potential juror if they had ever been "sued." The defense counsel asked the venire whether, excluding worker's compensation cases, anyone had been a plaintiff, "the one that filed the lawsuit."

■ Defense counsel also asked jurors, during voir dire, to disclose "claims for personal injuries" that did not result in lawsuits. However, defendant's new trial motion alleged only: "There was intentional juror misconduct through the concealment of suits as follows:" and then listed the suits. In order to be preserved for appellate review, matters discovered after trial must be specifically set out in the motion for new trial. *Rule 78.07; Crystal Tire Co. v. Home Service Oil Co.*, 525 S.W.2d 317, 322 (Mo. banc 1975). In *Williams*, the issue of undisclosed claims was sufficiently preserved in the new trial motion by the language: "jurors failed to truthfully respond to questions asked during voir dire concerning *prior claims*, litigation and involvement with Barnes Hospital." 736 S.W.2d at 36 (emphasis supplied). In contrast, in this case, the issue of undisclosed "claims" is not preserved for review.

Defendant originally charged that eight jurors intentionally concealed lawsuits. Regarding four—Betts, Dailey, Merriweather and Russell—there was no evidence they were involved in lawsuits. Defendant concedes that the fifth juror (Garrett) did not know, during voir dire, about her earlier lawsuit. The remaining three jurors require more discussion.

■ Asked whether he had been a plaintiff in a lawsuit, the sixth juror, Hellon, was silent. At the hearing on the motion for new trial, defense counsel presented evidence of a personal injury lawsuit that an attorney filed in 1990 with Hellon as the plaintiff. Hellon testified that he fell in a hotel parking lot, hit his eye on the bumper of a car, but did not receive medical care. He complained to the clerk at the hotel's front desk who told him to fill out a form. He sent the form to an attorney friend, from whom he later received an $800 settlement. Until presented with the petition at the new trial hearing, Hellon was unaware that his friend ever filed a lawsuit (in which no answer was filed, nor discovery undertaken).

■ If the juror's knowledge of his lawsuit is the same as his voir dire answer, "he has disclosed everything that the voir dire question requires and no nondisclosure of any kind occurred." *Wingate by Carlisle v. Lester E. Cox Medical Center*, 853 S.W.2d 912, 916–17 (Mo. banc 1993); *see also McHaffie v. Bunch*, 891 S.W.2d 822, 829 (Mo. banc 1995); *Brines*, 882 S.W.2d at 139. Here, there is no evidence that Hellon knew of this lawsuit at the time of voir dire. Such evidence is particularly important because the dispute is small and could well have been resolved without litigation. Since Hellon did not know of the lawsuit during voir dire, his silence to defendant's question was complete disclosure.

■ Hellon also failed to disclose a $300 landlord/tenant suit for renting an apartment in his name for his two older sons. Hellon testified he "knew nothing of litigation, lawsuit, nothing," and no evidence was presented that Hellon was ever personally served with the lawsuit—the landlord only posted

notice at the boys' apartment. Thus, the juror's knowledge of this matter during voir dire was the same as his voir dire answer. *See Wingate*, 853 S.W.2d at 916–17. No nondisclosure occurred. *Id.*

■■■ In yet a third case, a mother obtained an adult abuse order against Hellon, the father of her child. Intentional nondisclosure does not occur when there is a "reasonable inability to comprehend" the question; confusion can arise when counsel "narrow[s] the focus of the questions." *Williams*, 736 S.W.2d at 36, 37. When plaintiffs' attorney asked if jurors had been "sued," he said: "if it's something to do with divorces or child custody, I don't even want to hear about that." From this, Hellon reasonably could have understood that plaintiffs' counsel did not seek disclosure of domestic litigation, including his case. *See id.* at 35 n. 3. In addition, defense counsel never asked jurors to disclose lawsuits in which they had been defendants. Hellon's nondisclosure of the adult abuse order was not intentional.

■■■ As for the seventh juror (Brown), at the new trial hearing, defense counsel introduced five lawsuits against him for not paying taxes and bills, filed in 1980, 1982, 1984, 1987 and 1995. On voir dire, he was asked about his lawsuits:

MR. PEDROLI [plaintiffs' attorney]: Okay. Mr. Brown, have you ever been sued before?

VENIREMAN BROWN: Yes.

MR. PEDROLI: What type of case?

VENIREMAN BROWN: It was a case where I was parked under a building where the previous – the original owner had –

MR. PEDROLI: It arose out of the business of being a real estate agent?

VENIREMAN BROWN: Yes, it did.

MR. PEDROLI: Was that suit resolved?

VENIREMAN BROWN: Yes, it was.

MR. PEDROLI: Anything about that suit that turned you against the civil justice system we have in this country?

VENIREMAN BROWN: Better to settle out of court.

MR. PEDROLI: The fact that you were a defendant in a case, would that tend to make you lean towards the defendant in this case? You could put that aside?

VENIREMAN BROWN: (Nodding head.)

MR. PEDROLI: You have to answer out loud.

VENIREMAN BROWN: Yes, sir.

MR. PEDROLI: That's just so the court reporter can get your answer down. Thank you, Mr. Brown.

Plaintiffs' attorney never asked about additional suits. Here, Brown reasonably concluded that counsel was satisfied with the extent of disclosure, and that no additional disclosure was requested. *See Williams*, 736 S.W.2d at 36. This understanding by Brown was not a "reckless disregard" of his duty to disclose. *Id.* at 38. Defense counsel's questions solely concerned whether jurors had been *plaintiffs* in lawsuits, and no one alleges Brown had been a plaintiff.

■■■ The eighth juror, Willis, is married to an attorney who represents both plaintiffs and defendants. During voir dire by plaintiffs' counsel, she disclosed that she and her husband, as landlords of an office building, had been sued by a tenant. Later, defense counsel asked Willis whether she had ever been a plaintiff in a lawsuit:

MR. BEAN: . . . Anybody been a plaintiff in a lawsuit? I don't see any hands. Second row? I have three. Ms. Willis, you've already told us about yours, right?

VENIREMAN WILLIS: I don't know.

MR. BEAN: Landlord tenant?

VENIREMAN WILLIS: Right. On a lease.

MR. BEAN: On a lease?

VENIREMAN WILLIS: Yes, right.

Defense counsel later returned to juror Willis:

MR. BEAN: Okay. Working our way back. Ms. Willis, according to this form you've got an accident with an injury?

VENIREMAN WILLIS: Pardon me?

MR. BEAN: According to the form that the jury commissioner gives us, you have an accident with an injury.

VENIREMAN WILLIS: No, that's not true.

MR. BEAN: Sorry, I'm wrong. It says party to a pending lawsuit.

VENIREMAN WILLIS: Right.

MR. BEAN: You've already talked about that?

VENIREMAN WILLIS: Right.

MR. BEAN: Right. Sorry.

Throughout voir dire, defense counsel consistently narrowed his focus with each prospective juror to personal injury lawsuits, and even to medical malpractice lawsuits because of his concern that a personal injury suit would place the juror and plaintiff "in the same position." When a lawyer consistently narrows the focus of his inquiry, "it is not surprising that the answers responded to and reflected this focus." *Id.* at 37.

Willis did not intentionally conceal the four lawsuits filed by her attorney husband, all of which concerned jointly owned property, although she participated in discovery in some of the lawsuits. Given the consistent narrowing of defense counsel's focus to personal injury suits, and defense counsel's directing Willis back to the landlord/tenant matter, Willis reasonably did not think defense counsel sought disclosure of the four property/contract suits filed by her husband. Any fault on her part was not a "reckless disregard" of her disclosure obligations. *Id.* at 38. Willis's failure to comprehend the information solicited by defense counsel's questioning was not unreasonable. *Id.* at 38.

At the hearing on the motion for new trial, she was presented a fifth property suit, from 1975. She remembered only that the lawsuit concerned her 1974 Monte Carlo automobile, and no other details. Because this suit was "remote in time," any nondisclosure was unintentional. *Id.* at 36.

## V.

■ Because none of the eight jurors intentionally failed to disclose lawsuits, the trial court abused its discretion in ordering a new trial *on its* stated basis of intentional juror nondisclosure. However, the order must also be reviewed for unintentional nondisclosure. *See Rule 84.14.* If nondisclosure is unintentional, a new trial is not warranted unless the party seeking a new trial can meet its burden of proving prejudice that "may have influenced the verdict." *Williams,* 736 S.W.2d at 37.

■ Because Hellon disclosed his knowledge at the time of voir dire, prejudice is not considered as to his personal injury settlement and landlord/tenant suit. *See Wingate,* 853 S.W.2d at 916–917. No prejudice resulted from the adult abuse order against Hellon, because it has no bearing on the medical malpractice/wrongful death case or on juror Hellon's ability to fairly evaluate the evidence. *McHaffie,* 891 S.W.2d at 829.

■ Regarding juror Brown, defendant Guillen failed to meet his burden of showing that the five lawsuits for unpaid taxes and bills created prejudice, because Brown and Guillen were each defendants in their respective lawsuits. *See Brines,* 882 S.W.2d at 140. In fact, Brown voted against assessing any liability to Healthline Management, Inc., the corporate defendant in this case.

■ Juror Willis's involvement as a plaintiff in the five property lawsuits did not influence the verdict to prejudice Dr. Guillen. *See Williams,* 736 S.W.2d at 37. None of the five lawsuits in question involve personal injury, medical malpractice, or any other facts similar to the case against Dr. Guillen. Prejudice is missing because "the information not disclosed does not bear on the case." *McHaffie,* 891 S.W.2d at 829.

The circuit court abused its discretion if its order were based on unintentional nondisclosure.

## VI.

The circuit court's order of December 2, 1996, is reversed and remanded with direction to enter judgment on the jury's verdict.

PRICE, LIMBAUGH, HOLSTEIN and WOLFF, JJ., concur.

COVINGTON, J. dissents in separate opinion filed.

WHITE, J., concurs in opinion of COVINGTON, J.

COVINGTON, Justice, dissenting.

I respectfully dissent from the majority's holding that November 29, 1996, was a "legal holiday" within the Twenty-second Judicial Circuit of the City of St. Louis, under Rule 44.01(a). For the purposes of assuring certainty and predictability for the practicing bar and for the trial and appellate benches, I advocate a definition of "legal holiday" that would apply in all courts at all times. As it is used in Rule 44.01(a), the term "legal holiday" should be defined as a day specifically designated as a public holiday by proper legislative enactment such as section 9.010, RSMo 1994.[1]

There is sufficient legal authority, in Missouri and elsewhere, to support a rule that prefers certainty over uncertainty. As the majority acknowledges, in *Bowling v. Webb Gas Co., Inc. of Lebanon*, 505 S.W.2d 39, 40 (Mo.1974), this Court, while addressing a statute of limitations issue, made reference to section 9.010, in referring to Washington's birthday as a legal holiday. The *Bowling* Court's reference was in accord with generally accepted definitions of "legal holiday," a day designated specifically by the legislative body as a holiday. Black's Law Dictionary 894 (6th ed.1990), for example, defines "legal holiday" as "[a] day designated by law as exempt from judicial proceedings, service of process, demand and protest of commercial paper, etc. A day designated by legislative enactment for purpose within meaning of term 'holiday.'" Similarly, C.J.S. defines "legal holiday" as "a day designated and set apart by legislative enactment for [holiday] purposes." 40 C.J.S., *Holidays*, § 2, at 158 (1991). With all this said, however, it is without cavil that this Court is authorized to interpret its own rules, in this case Rule 44. My disagreement lies in the fact that the majority's holding implies that the definition of "legal holiday" will be determined on a case-by-case basis.

The burden of unpredictability arising from a practice that disallows certainty in determining what is or is not a "legal holiday" falls upon the lawyer. The problems of unpredictability and uncertainty are compounded in circumstances such as those in the present case where the presiding judge's memorandum to the circuit provided that "the Courts of the 22nd Judicial Circuit will not be open except as may be necessary to conduct certain business of the Court." The memorandum leaves open the possibility that in multi-division circuits, division 7, for example, could be open on the day after Thanksgiving while division 12 could be closed. In addition, the time during which the trial court may rule on after-trial motions could be different in each of those divisions. These examples reflect only a few of the questions that the lawyer will have to ask, and for which the lawyer may be unable to obtain a clear response, regarding the practice in each circuit, "legal holiday" by "legal holiday." These problems are compounded for the lawyer who practices in multiple circuits, that lawyer being more the rule than the exception. Furthermore, lack of uniformity, thus lack of certainty, regarding whether a day is a legal holiday may expose the lawyer to potential liability in a case where he or she may in good faith make an erroneous assumption with respect to whether or not a court is open.

To summarize, the majority's holding results in the inability to ascertain what "legal holiday" may mean in a particular circuit in a particular year without taking unusual steps, some of which could not be taken until after the "legal holiday." This inconsistency unnecessarily burdens the bar, the bench, and, ultimately, the citizens our profession serves. "Legal holiday" should be defined as a day designated as a public holiday by proper legislative enactment.

---

1. This opinion reflects the holding of the opinion of the Missouri Court of Appeals, Eastern District, in this case, authored by the Honorable Lawrence G. Crahan.