**Sherree KELTNER, Appellant,**

v.

**K–MART CORPORATION, Respondent.**

**No. ED 76613.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 30, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 19, 2001.

Application to Transfer Denied
April 24, 2001.

Michael A. Gross, St. Louis, MO, for appellant.

Larry D. Hale, Kmart Corporation, Gloria C. Reno, Andrew T. Pickens, St. Louis, MO, for respondent.

JAMES R. DOWD, Judge.

Sherree Keltner filed a negligence action against K–Mart Corporation alleging personal injuries caused by a falling light fixture in a K–Mart dressing room. After a jury returned a verdict for Keltner, K–Mart moved for judgment notwithstanding the verdict, new trial or remittitur. The trial court denied K–Mart's motions for judgment notwithstanding the verdict and remittitur, but granted its motion for a new trial after finding that a juror intentionally failed to disclose that he had been a defendant in four collection suits between 1980 and 1990. We reverse.

This appeal centers on what occurred during *voir dire*. Trial began on June 14, 1999. During *voir dire* Keltner's attorney began by introducing the attorneys, parties and witnesses, and asked whether any members of the panel had heard of or knew any of these people. After asking a number of standard questions, he focused the panels' attention on principles of negligence and asked whether any of them believed that there ought to be a limit on

the amount of compensation persons may receive for injuries caused by others.

Plaintiff's attorney then focused the panel's attention on the issue of personal injury suits. He asked the panel whether they or close family members had any medical training, if any person would have a problem returning a verdict for Keltner that included amounts for her medical bills, and if any panel members or their family members had ever been hurt or injured at a business. After a number of jurors described instances where they or a family member had been injured at work and filed suit against the business, plaintiff's attorney asked if any one on the panel had owned or had a family member who had owned or operated a business. The following exchange then occurred between plaintiff's attorney and juror # 650, the juror K–Mart claims intentionally failed to disclose prior collection suits:

JUROR NO. 650: My wife operates a day care.

[PLAINTIFF'S ATTORNEY]: Anyone filed a claim against her?

JUROR NO. 650: No.

[PLAINTIFF'S ATTORNEY]: Do you think the fact that this case is against a business would influence you here?

JUROR NO. 650: No.

[PLAINTIFF'S ATTORNEY]: You would be able to be fair and decide the case?

JUROR NO. 650: Yes, I can decide.

After juror # 1254 indicated that she and her brother had businesses and no injury suits had been filed against them, plaintiff's attorney then asked:

I have asked you about claims any of you have brought. Let me ask next if there are any instances where claims have been brought against you. Has anyone claimed you did something wrong that you are responsible for, an injury or something else, and filed a claim or a suit against you?

It is this question that K–Mart maintains triggered the jurors' duty to provide information about prior collection suits. Juror # 646 responded by describing an instance where he was sued for personal injuries when someone fell on the sidewalk in front of his home. No other juror responded. Plaintiff's attorney then returned to the issue of claims for a second time:

Anybody had a claim filed against them? How many of you have heard, read, or seen anything about the so-called lawsuit crisis? There's too many lawsuits, frivolous claims filed and injuries and awards, too much money? I don't want to ask your personal experience. Just raise your hand if you have ever heard, read, or seen anything about that. Has anyone on the panel had an orthoscopic or other shoulder surgery, orthoscopic or otherwise? Anybody?

No one responded.

The trial court found that the record was unclear "whether the jurors were given adequate opportunity to respond to the question about claims against them before the attorney went on to another subject."[1] After this, the questioning moved on, again focused on personal injuries. Plaintiff's attorney asked the panel members if they or anyone close to them had ever suffered or been hospitalized for a shoulder injury.

The attorney for K–Mart began her *voir dire* by introducing herself and her law firm. She asked if anyone on the panel would have a problem with the fact that, because K–Mart is a corporation, no one

---

1. K–Mart does not contend that there was sufficient time to answer before plaintiff's at-torney asked about the "lawsuit crisis."

would be sitting in the chair beside her at the defense table. She asked if the panel understood that the plaintiff has the burden of proof. The questioning then shifted to personal injuries. After mentioning a juror who had described an injury during plaintiff's *voir dire*, she asked: "Is there anything or anybody else who had any injuries?" No one answered. She went on: "And I don't recall [plaintiff's attorney] asking this, but any injuries of any other self-service type stores?"

The defense attorney then asked whether anyone thought that because K–Mart is a corporation, Keltner's burden should be less. She asked whether anyone was unhappy with K–Mart in any respect; whether any of the panel members knew one another; and whether anyone on the panel had something going on in their life that might interfere with their duties as jurors. She then reminded the jurors that they could not substitute their feelings for evidence. After this she asked: "has anyone thought of any responses to [plaintiff attorney's] questions that you would like to make at this time?" She closed her *voir dire* by asking again if the panel understood the burden of proof, and whether any one thought that "simply because Mrs. Keltner brought a claim that she is automatically entitled to some money?"

On June 16, 1999, after a three-day trial, the jury returned a verdict for Keltner. On July 12, 1999, K–Mart filed a motion for judgment notwithstanding the verdict, for a new trial or remittitur. Among the reasons K–Mart gave as grounds for its motion was that a juror had failed to disclose during *voir dire* that four collection suits had been filed against him and his

wife between 1980 and 1990,[2] and that in 1989 they filed for bankruptcy. K–Mart argued that the following question "unequivocally triggered" the juror's duty to tell the court about his prior collection suits and justifies the trial court's finding of intentional non-disclosure:

> Let me ask next if there are any instances where claims have been brought against you. Has anyone claimed you did something wrong that you are responsible for, an injury or something else, and filed a claim or a suit against you?

Juror 650 was issued a subpoena to appear before the court for a hearing on July 23, 1999. At that hearing the juror was questioned extensively about his prior debts, collection suits and bankruptcy. Counsel for K–Mart began her interrogation:

> Do you *recall* being asked the question as to whether or not any lawsuits have ever been filed against you or had ever been filed?

(emphasis added). Plaintiff's attorney objected to the defense attorney paraphrasing the question asked at *voir dire*. The defense attorney then asked juror # 650 "do you *recall* the question" and read the question to him. (emphasis added). The juror responded: "I didn't remember at the time there was some claims for debts back in the '80s that I took care of most of them. And when I got later on, then I paid them off and I had to file bankruptcy ..." The juror was then required to testify about the circumstances surrounding his bankruptcy and each of his collection suits, one by one. After this, counsel for K–Mart attempted to establish that the juror

**2.** In 1980, the Missouri Division of Employment Security garnished the juror # 650's wages for $324.00 in overpaid benefits. In 1987, juror # 650 and his wife were sued by Central Hardware Company, Inc. for $379.87.

In 1988, juror # 650 and his wife were sued by Ford Motor Credit Company, Inc. for $4,718.73. And in 1990 juror # 650, his wife and their daughter were sued by First City Financial Corporation for $720.80.

had deliberately sought to conceal this information from the court during *voir dire.*

Q .... you did say you did *hear* the question; is that correct?

A. Yes, I heard the question, but I didn't—I don't remember. I don't know if it was current or back many years or what.

Q. And you didn't raise your hand to ask whether or not they were talking about recently or back so many years; is that correct?

A. No, I didn't.

Q. So you were aware of these claims at the time the *voir dire* was going on?

A. I don't remember them. I just thought you was talking about the last couple of years or something. I didn't know it would be going back 10 years or 5 years or what or more.

Q. But you didn't ask, though?

A. No.

Q .... you were aware all the questions that were asked was asked of each and every juror and you were supposed to respond?

A. Yes.

Q. And you did not respond to that question?

A. I didn't remember the lawsuits because after that long a period, I more or less didn't. I did the best I could do to answer.

(emphasis added).

On cross-examination by plaintiff's attorney, the juror said that he did not specifically recall any of the collection suits when asked about claims during *voir dire.* He also testified that none of the collection suits resulted in a trial. On re-direct, K–Mart's attorney suggested that the juror and the attorney for Keltner had colluded on the testimony he was giving. The following exchange occurred:

Q. Is it your testimony here before the Court today that you discussed in detail these suits with Plaintiff's counsel before coming to court and testifying this morning; is that correct?

A. I called and asked why was I being subpoenaed, for I had no idea.

Q. And you discussed in detail, you just testified to [plaintiff's attorney], in detail these suits before you came to the court to testify in court today; is that correct?

A. I tried to find out why I was called in.

Q. Did you—

THE COURT: Would you listen to the attorney carefully, to what she's asking you, and just answer the question, please?

BY [DEFENSE COUNSEL]:

Q. Did you discuss in detail with Plaintiff's counsel before you testified in here in court today these suits?

A. Yes.

Q. And you did not discuss those with anyone at my office; is that correct?

A. I called your office.

Q. You did not discuss these suits with anyone in my office; is that correct?

A. No.

Q. It's correct, you did not discuss these suits with anyone at my office; is that correct?

A. Yes.

Q. Was it suggested or told you by Plaintiff's counsel that you simply if you didn't remember, just say you didn't remember?

A. No.

Q. Could you state in your own words exactly what was discussed?

A. I asked him why was I being sued or why I was coming here, and he told me it was a matter of the lawsuits filed against me back in '80s or 10 years ago and basically that was it. I called your office because I was supposed to be in Florida because I was to be taking my grandchildren to Florida and nobody returned my call. Nobody returned my call.

Q. It's your testimony that you spoke to no one at my office; is that what you're telling the Court?

A. No, I talked to somebody, to Mr. Hale or when I called your office about three or four times and talked to someone.

Q. It is your testimony that you were supposed-you did not receive a call back or you returned the call?

A. I was supposed to leave Wednesday to go to Florida and was trying to get something set up so I could leave because I lost a day of vacation and hotels and I would go down there and wouldn't have reservations.

Q. Were you upset by that?

A. What?

Q. Were you upset by that?

A. No, not upset. Just I had reservations and I hoped I could find a place to stay.

After the hearing the court granted K–Mart's motion for a new trial. In its order the court found, first, that "some jurors" understood the question about "claims" because juror # 646 answered the question. That juror, as previously stated, told of a pedestrian who was injured on the sidewalk in front of his house. The court then found intentional non-disclosure by juror # 650 on the ground that he gave what the court characterized as "evasive" answers at the post-trial hearing.

Keltner argues that the court erred because the questions asked at *voir dire* were insufficiently clear to trigger the juror's duty to disclose his previous collection suits or to support the trial court's finding of intentional nondisclosure. If there was non-disclosure, Keltner claims, it was unintentional and not shown to result in prejudice likely to affect the verdict. K–Mart argues that the failure to disclose collection cases filed by other corporations revealed a specific prejudice held by juror # 650 against corporations such as itself.

 Both parties in a lawsuit have the constitutional right to a fair and impartial jury. Mo. CONST. ART. I, SEC. 22(a); *Beggs v. Universal C.I.T. Credit Corp.*, 387 S.W.2d 499, 503 (Mo. banc 1965). "The essential purpose of *voir dire* is to provide for the selection of a fair and impartial jury through questions which permit the intelligent development of facts which may form the basis of challenges for cause, and to learn such facts as might be useful in intelligently executing peremptory challenges." *Pollard v. Whitener*, 965 S.W.2d 281, 286 (Mo.App. W.D.1998). "It is the duty of a juror on *voir dire* examination to fully, fairly, and truthfully answer all questions directed to him (and to the panel generally) so that his qualifications may be determined and challenges may be intelligently exercised." *Seaton v. Toma*, 988 S.W.2d 560 (Mo.App. S.D.1999). A juror is not the judge of his or her own qualifications. *Beggs*, 387 S.W.2d at 503. Failing to ask a question on *voir dire* waives the right to challenge the juror on any grounds not asked. *State v. Walton*, 796 S.W.2d 374, 379 (Mo. banc 1990).

*Voir dire* gives the parties an opportunity to develop information that might disclose a potential juror's specific bias in a suit of the type at trial. Courts will not,

however, stack inferences, as K–Mart urges, to conclude that the juror possesses a general bias against a party. *See Hale v. American Family Mut. Ins. Co.*, 927 S.W.2d 522, 527 (Mo.App. W.D.1996). Information likely to disclose a general bias against a party must be developed by questions designed to clearly establish the existence of such a sweeping bias.

■■■ Courts should not overturn a jury verdict lightly. Trials are costly—for the litigants, the jurors and taxpayers. *See McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 553, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).[3] Before a trial court may overturn a jury verdict because of intentional non-disclosure it must first determine whether non-disclosure occurred. The Supreme Court of Missouri has consistently made clear that a finding of non-disclosure requires a preliminary determination: *Was the question clear?* *See Heinen v. Healthline Management, Inc.*, 982 S.W.2d 244, 249 (Mo. banc 1998); *McHaffie v. Bunch*, 891 S.W.2d 822, 829 (Mo. banc 1995); *Brines v. Cibis*, 882 S.W.2d 138, 139 (Mo.1994); *Wingate by Carlisle v. Lester E. Cox Medical Center*, 853 S.W.2d 912, 914 (Mo. banc 1993); *Williams v. Barnes Hospital*, 736 S.W.2d 33, 35 (Mo. banc 1987).

■■■ While there are no criminal penalties assessed, juror non-disclosure is in other respects similar to perjury. "Precise questioning is imperative as a predicate for the offense of perjury." *Bronston v. United States*, 409 U.S. 352, 362, 93 S.Ct. 595, 602, 34 L.Ed.2d 568 (1973). The United States Supreme Court has identified three essential goals for this requirement in perjury cases: (1) to preclude convictions grounded on surmise or conjecture; (2) to prevent witnesses from unfairly bearing the risks of inadequate examination; and (3) to encourage witnesses to testify (or at least not discourage them from doing so). *Id.* at 359, 93 S.Ct. 595. Analogous values are at stake in the case of juror non-disclosure. First, in the absence of a clear question verdicts may be impeached on the basis of surmise and conjecture, as in this case.[4] Second, no legitimate purpose is served by requiring jurors to appear at a post-trial hearing, under a cloud of suspicion, unless the court has already determined that the question the juror allegedly failed to answer *unequivocally triggered* the juror's duty to respond. Third, it ill serves the judicial system to subject jurors to the embarrassment and inconvenience of a post-trial hearing and thereby add to the reasons so many citizens are reluctant to serve as jurors.

These important values underlie the Missouri Supreme Court's requirement

---

**3.** Missouri is more sympathetic than is the federal system to a party seeking to overturn a verdict because of juror non-disclosure in that Missouri requires a new trial where intentional non-disclosure is found, regardless of prejudice. *Heinen v. Healthline Management, Inc.*, 982 S.W.2d 244, 248 (Mo. banc 1998). The U.S. Supreme Court requires a showing of prejudice before a new trial may be ordered. The *McDonough* court, citing the "important investment of private and social resources" that a trial represents held that "it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination," and that "to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 555–56, 104 S.Ct. 845.

**4.** The juror here was never even asked if he understood the question or what he thought the question meant.

that non-disclosure can occur only after a clear question on *voir dire* unequivocally triggers the venireperson's duty to respond. *Wingate*, 853 S.W.2d at 916. Venirepersons cannot be required to *guess* at an attorney's meaning. Attorneys should know the sort of information they desire from the panel. They control the form of the questions they ask. If the plaintiff's attorney fails to ask a material question clearly, the defense is free to ask that question more clearly. Courts will not permit attorneys to take advantage of their own or their opponent's ambiguous questions to impeach a verdict they dislike. So the first question that must be answered by a trial court in determining if juror non-disclosure has occurred is: was the question the juror is alleged to have failed to answer clear? *Id.* Only after the court has determined that the question is clear does it proceed to the question of whether the non-disclosure was intentional or unintentional. *McHaffie*, 891 S.W.2d at 829.

Missouri courts have never ruled specifically on the standard of review in determining if there has been a clear question. The dissent, citing *Brines*, argues that the standard should be abuse of discretion. We disagree. In *Brines* the court did not face the question of whether the question was clear. In *Brines* the judge had asked the jurors: "Do we have anyone on the [jury] panel who is now or has been a defendant in a lawsuit?" *Brines*, 882 S.W.2d at 139. The Supreme Court, without specifically indicating its standard of review, held: "This question unequivocally triggered the prospective jurors' duty to disclose previous lawsuits against them." *Id.*

■ In reviewing a determination that intentional or unintentional non-disclosure has occurred we apply an abuse of discretion standard. But here we are ad-

dressing the threshold determination: Was the question clear? When appellate courts are called upon to determine the clarity of language, their review is generally *de novo*. This is true in the interpretation of contracts (*Goldstein and Price, L.C. v. Tonkin & Mondl, L.C.*, 974 S.W.2d 543, 551 (Mo.App. E.D.1998)) and statutes (*Martinez v. State*, 24 S.W.3d 10, 15 (Mo. App. E.D.2000)). While Missouri courts have never been called on to decide the type of review employed in deciding whether a question is sufficiently clear to support a finding of perjury, a determination similar to the one we make here, the federal courts have. They review the question of fundamental ambiguity in perjury cases *de novo*. *See, e.g., United States v. Serafini*, 167 F.3d 812, 819–20 (3rd Cir.1999); *United States v. Manapat*, 928 F.2d 1097, 1099 (11th Cir.1991); *United States v. Lighte*, 782 F.2d 367, 375 (2nd Cir.1986). For these reasons we hold that our review of the clarity of questions on *voir dire* is *de novo*. *See also McHaffie*, 891 S.W.2d at 829 (declaring a question unclear without abuse of discretion analysis).

■ Only after there has been a ruling that the *voir dire* question is clear, may the court hear evidence and determine whether the disclosure was intentional or unintentional. In Missouri, a finding of intentional nondisclosure amounts virtually to a *per se* rule mandating a new trial. *Heinen*, 982 S.W.2d at 248. "Finding a juror had a 'reckless disregard' for the responsibility to disclose information during *voir dire* is tantamount to intentional nondisclosure." *Id.* Unintentional nondisclosure exists where the experience is insignificant, remote in time or when the venireperson reasonably misunderstands the question. *McHaffie*, 891 S.W.2d at 829. If nondisclosure is unintentional, a new trial may be granted only if it "may

have influenced the verdict so as to prejudice the party seeking a new trial." *Williams,* 736 S.W.2d at 37. Prejudice is a determination of fact for the trial court, its finding to be disturbed on appeal only for abuse of discretion. *Id.* A new trial is not mandated where the information not disclosed does not bear on the case or on the prospective juror's ability to fairly evaluate the evidence. *McHaffie,* 891 S.W.2d at 829.

The dispositive issue here is: Was the question juror # 650 allegedly failed to answer clear? The trial court did not explicitly make a finding that the question was clear; but such a finding is implicit in the court's order. The court stated that "the question was understood by at least some jurors" because juror # 646 responded to the question by telling of a suit for personal injuries arising from a pedestrian falling on the juror's sidewalk. The trial court erred. Juror # 646's response actually provides support to plaintiff's contention that a reasonable juror would understand the question to call for claims made for personal injuries. None of the panel members responded with information about collection suits.

The record reveals that Keltner's attorney repeatedly focused the venire panel's attention on personal injuries. Prior to asking about "claims," Keltner's attorney raised the issue of negligence four times. He used cognates of "injury" *forty-three* times. Collection suits and debts were never mentioned. The question he asked was whether "there are any instances where claims have been brought against you. Has anyone claimed you did something wrong that you are responsible for, an injury or something else, and filed a claim or a suit against you?" Only one juror responded to this question. In that response juror # 646 told of a *personal injury* suit filed against him. This response provides no support for the claim that "some jurors" understood that the question called for information about collection suits.

K–Mart cites *Williams* to support the trial court's finding that the *voir dire* question was clear. K–Mart points to the statement in *Williams* that: "A 'claim' even in the barest of layman's language, includes not only a lawsuit but also a claim settled out of court." *Williams,* 736 S.W.2d at 38. K–Mart also points to the statement in *Brines* that asking whether anyone on the jury panel has been a "defendant in a lawsuit" unequivocally triggers the duty to disclose previous lawsuits against them. *Brines,* 882 S.W.2d at 139.

*Williams* involved a claim for personal injury arising from alleged obstetrical medical malpractice. *Williams,* 736 S.W.2d at 34. The jury returned a 9–3 verdict in favor of the plaintiff. *Id.* In *Williams* the attorneys conducted an extensive *voir dire.* Together, the plaintiff's and the defendant's attorneys asked the panel whether they had been involved in "lawsuits" or "claims" *seven* times. *Id.* at 34–35. The plaintiff's attorney began by asking:

> Is there any member of this panel who has—had a lawsuit or a claim brought against him or her? Have any of you folks ever been sued? I'm not talking about domestic relations. Other than that. I'm talking about something which would involve an injury to you. Have any of you folks ever had a lawsuit or claim brought against you?

*Id.* After responses by the panel, he continued:

> Is there anybody else here who has been sued or had a claim brought against him or her, or . . . have any of you folks ever brought a suit against anyone?

*Id.* at 35. After questioning a venireperson, he resumed:

> Is there anyone else who has ever had a lawsuit or claim brought against him or her or have any of you folks ever brought a lawsuit or a claim against anyone else? And let me enlarge that-the reason we asked this is because there is nothing worse for either side than getting a verdict and having it set aside because somebody forgot to tell us that they had an automobile accident in Austin, Texas, eight years ago and it can be that silly.

*Williams,* 736 S.W.2d at 35. Then, during the defense's *voir dire* examination, counsel asked a series of questions pertaining to prior litigation and claims:

> First let me ask about claims made. That is where you had a claim against another party, whether it be an automobile wreck or whether it be a lawsuit that you fell somewhere, something like that. Now, some of you have already told us about your claims; Workmen's Compensation would be a claim also.
>
> \* \* \*
>
> Do any of the rest of you have claims that you have asserted on your own behalf that have not been told to us so far today?
>
> \* \* \*
>
> Are there any of you that have other personal injuries that you've made claims against someone else for either—either through Workmen's Compensation or automobiles, that kind of thing?

*Id.* Finally, defense counsel asked whether any of the prospective jurors had claims brought against them:

> Let me ask the other side of the coin. How many of you have been in the position that Barnes Hospital is now in, that someone has asserted a claim against you? Are there any of you that

have been defendants in an actual lawsuit? I take it by your silence no one has.

*Id.*

Despite this extensive and repeated emphasis on whether venirepersons had been involved in lawsuits, one juror failed to disclose two credit card actions against her and another juror failed to disclose a contract claim she had filed and the fact that her wages were being garnished by a major corporation. *Id.* at 37. The *Williams* court *upheld* the trial court's determination that these failures to disclose were unintentional and not prejudicial. *Id.* Explaining itself, the court said:

> Whatever general import these questions [above] could be said to have, the examples used by both counsel during *voir dire* consistently narrowed the focus of the questions to actions involving personal injuries. The only concrete references given the prospective jurors were actions involving personal injuries, nothing more. It is therefore not surprising that the answers responded to and reflected this focus.

*Id.*

The *Williams* court, however, *reversed* the trial court's finding of unintentional non-disclosure in the case of a juror who failed to disclose he had been involved in *personal injury* litigation. It was in discussing *this* failure to disclose that the Court made the remark that a claim "even in the barest of layman's language, includes not only a lawsuit but also a claim settled out of court." *Williams,* 736 S.W.2d at 38. Contrary to what K–Mart maintains, *Williams* does not stand for the proposition that any question asking about "claims" is "even in the barest of layman's language" a clear question. The language from *Williams* that K–Mart relies on must be understood in the context in which it was made; namely, a personal injury suit

where the attorneys asked about prior lawsuits and claims seven times and the juror failed to reveal his involvement in a *personal injury* suit. *Id.* That same court had no difficulty affirming the trial court's finding that there was no juror misconduct for failing to disclose credit card actions, a contract claim, and a wage garnishment by a major corporation because the questions and examples used by the attorneys during *voir dire* focused on personal injuries. *Id.* at 37. The same is true in this case. Collection suits and debts were never mentioned during *voir dire*. The focus of the attorneys was exclusively on personal injuries.

We find K–Mart's citation of *Brines* similarly unpersuasive. *Brines* involved a claim for alleged negligence in the care and treatment of congenital glaucoma. A jury returned a defendant's verdict by a 9–3 vote. *Brines*, 882 S.W.2d at 139. During jury selection, the trial judge asked: "Do we have anyone on the [jury] panel who is now or has been a defendant in a lawsuit?" A juror remained silent even though he had recently been a defendant in *eight* lawsuits. *Id.* Pointing to the fact that the lawsuits were all filed in the previous six years and that he actually recalled the suits, a divided Missouri Supreme Court reversed the trial court and held that the juror's non-disclosure was intentional. *Id.*

In *Brines* the judge had asked the jurors plainly and clearly whether any of them had ever been a "defendant in a lawsuit." K–Mart analogizes this question with the one asked here. We see significant differences. First, *Brines* involved the simple question of whether anyone had been a defendant in a lawsuit. Here the question is: "Has anyone claimed you did something wrong that you are responsible for, an injury or something else, and filed a claim or a suit against you?" Second,

there is no indication in *Brines* that the attorneys or judge repeatedly focused the jurors' attention on the issue of personal injuries before asking the question about lawsuits. Third, in *Brines* the question was not phrased in a manner that narrowed its focus to personal injuries.

K–Mart argues that the "or something else" at the end of the question asked by plaintiff's attorney broadened its original scope beyond personal injury suits, to include all prior lawsuits. We disagree. While technically one might say that the expression "or something else" has the effect of eliminating the reference to "injury" in the question, the standard for clarity is not the literal meaning of a question when carefully parsed by a grammarian. The standard we apply is whether a lay person would reasonably conclude that the undisclosed information was solicited by the question. *Aliff v. Cody*, 987 S.W.2d 439, 443–44 (Mo.App. W.D.1999); *see also McDonough*, 464 U.S. at 555, 104 S.Ct. 845. Missouri courts have consistently looked to the context of a question when determining whether non-disclosure is intentional or unintentional. *Heinen*, 982 S.W.2d at 248–49. There is no compelling reason why we should adopt a different standard of clarity when making the initial determination of whether the question "*unequivocally* triggered" the jurors' duty to disclose information.

How a reasonable lay person interprets the meaning of a question depends not only on the words used, but also on the context. *Williams*, 736 S.W.2d at 37; *see also Serafini*, 167 F.3d at 821 ("the meaning of individual questions and answers is not determined by lifting a statement out of its immediate context, when it is that very context which fixes the meaning of the question.")(internal quotation and citation omitted). Here, both the words and the context suggest that the attorney sought information about personal injury

suits. The entire focus of Keltner's *voir dire* was on the issue of negligence and personal injuries. Before asking the question about claims, he used cognates of injury *forty-three* times. The words "collection suit" and "debt" are never used. The fact that he again used the word "injury" in the question itself makes it altogether reasonable for a person to believe that he was asking for information about personal injury suits. K–Mart was free to ask the panel members if they had ever had a collection suit filed against them. *Brines* is, therefore, distinguishable.[5] Under the circumstances of this case, we simply cannot find that a clear question, requiring disclosure of prior collection suits, was asked.

K–Mart focuses not on the questioning during *voir dire* but on the post-trial hearing. It argues that even if the question was unclear, the trial court had authority to order a new trial because it determined that the juror understood the question and was not telling the truth at the post-trial hearing. In fact, the court never found that the juror understood the question. The court said merely:

> The juror stated that he didn't remember the cases against him and when questioned further said he didn't think the question appled [sic.] to him and finally the juror stated that he thought the cases were too old.

The responses of the juror were so evasive that there remained little doubt that this was an intentional nondisclosure of claims by the juror.

K–Mart's claim of intentional non-disclosure centers on the juror's testimony at the post-trial hearing, where he was asked repeatedly about his consumer debts, his inability to pay them and his resulting bankruptcy. The record reveals that the juror was never even *asked* if he understood the question, only if he *heard* or *recalled* being asked the question at *voir dire.*

Second and more importantly, *nothing* that happens at a post-trial hearing will make an unclear question asked during *voir dire* clear. The question is either clear or it is not. If it is not, there has been no non-disclosure, intentional or otherwise. *McHaffie,* 891 S.W.2d at 829.

We find that the *voir dire* question did not clearly call for information regarding collection suits and hence there was no non-disclosure. The Circuit Court's order of July 27, 1999 is reversed and remanded with direction to enter judgment on the jury's verdict.

CRANDALL, J., concurs.

AHRENS, P.J., dissenting in separate opinion.

---

**5.** The two dissenting judges in *Brines* argued that even the question "have you been a defendant in a lawsuit?" was not clear enough to unequivocally trigger the jurors' duty to respond. Judge Holstein explains why ordinary persons may not respond to such a question:

> The reason potential jurors do not respond to such questions is that the popular notion of being a "defendant in a lawsuit" may not mean the same thing as it does to lawyers. To many ordinary people, being a "defendant in a lawsuit" means hiring a lawyer and going to court to defend some claim on the merits before a judge or a jury. To a

venireperson asked that question, it may be perceived as seeking to know if the juror had contact with court personnel or if the potential juror had some experience or background with how a trial works. From that perspective, it seems irrelevant that one has received a summons. It is at least conceivable that an unsophisticated person served with a summons in a collection matter, traffic case, or the like, to which such person has no defense, would not understand himself to have been a "defendant in a lawsuit ."

*Brines,* 882 S.W.2d at 142.

CLIFFORD H. AHRENS, Presiding Judge, dissenting.

I respectfully dissent. I would affirm the trial court's grant of a new trial on the basis of intentional nondisclosure by a juror in response to questions on voir dire. The court conducted an evidentiary post-trial hearing at which the juror testified. After hearing the juror's testimony, the trial court specifically found: "The responses of the juror were so evasive that there remained little doubt that this was an intentional nondisclosure of claims by the juror."

"Appellate courts should be more liberal in upholding a grant of a new trial than in awarding a new trial when the trial court denies the motion." *Bodimer v. Ryan's Family Steakhouses, Inc.*, 978 S.W.2d 4, 8 (Mo.App.1998). Our review of a grant of a new trial is "directed to whether the trial court abused its discretion in ordering a new trial." *Id.* An abuse of discretion occurs "when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Albanese*, 9 S.W.3d 39, 45 (Mo.App.1999)(quoting *State v. Jackson*, 969 S.W.2d 773, 775 (Mo. App.1998)).

"Nondisclosure, whether intentional or unintentional, can occur only after a clear question is asked on voir dire." *Brines v. Cibis*, 882 S.W.2d 138, 139 (Mo. banc 1994). "Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror and 2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable." *Williams v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987). "The de-

termination of whether concealment is intentional or unintentional is left to the sound discretion of the trial court." *Id.* The trial court's determination is given great weight and will not be disturbed on appeal absent an abuse of discretion. *Brines*, 882 S.W.2d at 139.

There is nothing in the record on appeal to indicate the trial court abused its discretion in granting the motion for a new trial or in finding intentional nondisclosure. The majority opinion does not decide the question of whether the trial court abused its discretion in finding that the juror's nondisclosure of collection suits by major corporations was intentional. Instead, the majority determines as a matter of law that the question asked of the juror about claims was unclear. The majority applies a standard of whether a lay person would reasonably conclude that the undisclosed information was solicited by the question. Without determining whether this is the proper standard, the record does not support the majority's conclusion that the question was unclear. The question specifically asked:

I have asked you about claims any of you have brought. Let me ask next if there are any instances where claims have been brought against you. Has anyone claimed you did something wrong that you are responsible for, an injury or something else, and filed a claim or a suit against you?

The juror did not testify that the question was unclear to him, or that he did not understand it included collection suits or claims. Instead, the juror testified that when he answered the question on voir dire, he did not remember these claims for debts. Specifically, he responded: "I didn't remember at the time there was some claims for debts back in the '80s that I took care of most of them. And when I got later on, then I paid them off and I

had to file bankruptcy...." He later testified:

Q .... you did say you did hear the question; is that correct?

A. Yes, I heard the question, but I didn't—I don't remember. I don't know if it was current or back many years or what.

Q. And you didn't raise your hand to ask whether or not they were talking about recently or back so many years; is that correct?

A. No, I didn't.

Q. So you were aware of these claims at the time the *voir dire* was going on?

A. I don't remember them. I just thought you was talking about the last couple of years or something. I didn't know it would be going back 10 years or 5 years or what or more.

Q. But you didn't ask, though?

A. No.

Q .... you were aware all the questions that were asked was asked of each and every juror and you were supposed to respond?

A. Yes.

Q. And you did not respond to that question?

A. I didn't remember the lawsuits because after that long a period, I more or less didn't. I did the best I could do to answer.

How the juror subjectively interpreted a question should not be dispositive on the issue of whether the question was clear. But it is apparent from the juror's testimony at the post-trial hearing that his nondisclosure had nothing to do with whether the question applied to collection claims as opposed to personal injury claims. He testified that his nondisclosure was because he didn't remember these claims and because he didn't know if the question asked for current or back claims. The trial court specifically found that testimony not credible and was "so evasive that there remained little doubt that this was an intentional nondisclosure of claims by the juror." I would defer to the trial court's determination of credibility because the trial judge was better able to observe the juror's demeanor during voir dire and the evidentiary hearing. The record supports the trial court's finding of intentional nondisclosure, which prejudiced the defendant. I find no abuse of discretion and would affirm the judgment of the trial court.