### STATE of Missouri, ex rel., MISSOURI HIGHWAYS AND TRANSPORTATION COMMISSION, Respondent,

v.

### David E. GREENWOOD and Carolyn G. Greenwood, Appellants.

### Nos. WD 68846, WD 68847.

Missouri Court of Appeals, Western District.

Sept. 23, 2008.

Application for Transfer to Supreme Court Denied Oct. 28, 2008.

Application for Transfer Denied Dec. 16, 2008.

Robb A. Denney, Lee's Summit, MO, for Respondent.

Jennifer Marie Hannah, Overland Park, KS, for Appellants.

Before HAROLD L. LOWENSTEIN, P.J., PAUL M. SPINDEN, Judge and VICTOR C. HOWARD, Judge.

VICTOR C. HOWARD, Judge.

David E. Greenwood[1] and Carolyn G. Greenwood (together "Greenwood") appeal a jury award arising out of a condemnation action brought by the Missouri Highways and Transportation Commission (MHTC). Greenwood owned a farm adjacent to U.S. Highway 36. MHTC sought to condemn approximately 7.5 acres of Greenwood's land to accommodate a federally funded highway improvement project. In 1999, a duly appointed commission of residents of Caldwell County pursuant to section 523.040 (Commission) heard evidence con-

---

1. David Greenwood also served as trustee of a trust, which held a portion of the land in question.

cerning the taking and determined the amount of just compensation for the taking. Under the statutory scheme, Greenwood had the right to withdraw the award, although he would be required to refund the excess, along with interest at the statutory rate, if a jury later reduced the reward. MHTC deposited the amount with the circuit court, and Greenwood exercised his option to withdraw the award. MHTC then filed exceptions to the award. Nearly seven years later, a jury determined that just compensation for the land was substantially less than what was ordered by the Commission. The court ordered that Greenwood refund the difference between the jury's award and the Commission's award and pay statutory interest as mandated by section 523.045.[2] Greenwood now appeals claiming that the court erred in failing to hold an evidentiary hearing concerning juror non-disclosure, admitting evidence of an agreement between Caldwell County and the Missouri Department of Transportation (MoDOT), admitting evidence of the manner of Greenwood's use of other property, and ordering that Greenwood pay statutory interest on the excess of the Commission's award. We affirm the judgment.

### Facts and Background

Greenwood owned approximately 6,000 acres of land in Caldwell County. The land abutted Highway 36 and enjoyed four direct access points to the highway. A family farming operation known as Greenwood Swine Systems, Inc. used most of the land. MHTC sought to widen Highway 36 from a two to a four-lane highway. In its condemnation plan, it indicated that to achieve this result, it would be required to condemn a narrow strip of Greenwood's property totaling approximately 7.5 acres. It would also be required to maintain the ability to block each of Greenwood's four access points to the improved highway.

According to Greenwood, the taking of those 7.5 acres changed the highest and best use of the entire tract. David Greenwood offered uncontradicted evidence that he would no longer be able to use the land to raise swine but would have to raise cattle.[3] Without direct access to Highway 36, Greenwood would be forced to move heavy farming equipment and livestock across county bridges with weight and width restrictions and county roads with steep inclines, which were also prone to seasonal flooding. It would become substantially more difficult to bring emergency equipment to the farm.

Prior to the taking, Caldwell County discussed with the MoDOT the need to upgrade the county roads surrounding the Greenwood's farming operation after the MHTC altered access to Highway 36. MoDOT sent a letter to the County indicating that it could either do nothing and wait to review access to Highway 36 once other access points are blocked, provide the county with 1.5 million dollars to upgrade the existing county roads, or provide no financing for county road improvement. Under protest and representing that 1.5 million dollars was insufficient to make the necessary improvements, the County agreed to the 1.5 million dollars. This agreement did not mandate which roads would actually be upgraded and when those improvements would be completed.

2. Unless indicated otherwise, all citation to statutes refers to RSMo 2000 and all citation to Rules refers to Missouri Supreme Court Rules (2008).

3. Cattle operations are not as intensive as hog operations because cattle, unlike hogs, can be turned out to pasture and hogs must be continually transported through the property in a truck.

Greenwood was not named in the instrument.

In 1999, the Commission awarded Greenwood a total of $526,531 as just compensation for the condemned 7.5 acres. MHTC paid the amount into the court's registry and filed exceptions to the award. Several days later, Greenwood withdrew the compensation. In 2004 and 2006, the trial court issued a notice that the exceptions would be dismissed for want of prosecution unless MHTC took immediate action. Trial was scheduled for 2007.[4]

At this time, Greenwood still had direct access to Highway 36 and the County had not received the 1.5 million from MoDOT to improve the roads. At trial, the jury heard conflicting evidence concerning the value of the condemned land ranging from $860,000 to $37,200. A jury returned a verdict indicating that the just compensation for the property was $267,000. The court entered a judgment for MHTC, which ordered Greenwood to pay $292,638.67. This amount represented the difference between the Commission's award and the jury's award plus statutory interest at a rate of 6% per annum from the date Greenwood withdrew the Commission's award from the court's registry. The court also awarded post-judgment interest at a rate 9% per annum. Greenwood now appeals claiming the trial court erred in overruling a motion for a new trial or conduct an evidentiary hearing concerning a juror's alleged misconduct during voir dire, admitting evidence pertaining to the agreement between the county and MoDOT, admitting evidence of Greenwood's use of other parcels of land not subject to the current condemnation, and ordering prejudgment interest.[5]

## Standards of Review

■ We review a trial court's denial of a motion for a new trial as well as a trial court's decision not to hold an evidentiary hearing only for abuse of discretion. *Senn v. Manchester Bank of St. Louis*, 583 S.W.2d 119, 133 (Mo. banc 1979), *overruled on other grounds by Haarmann v. Davis*, 651 S.W.2d 134 (Mo. banc 1983); *Warren Davis Props. V, L.L.C. v. United Fire & Cas. Co.*, 111 S.W.3d 515, 520 (Mo.App. S.D.2003). Furthermore, when an appellant claims that the trial court improperly admitted evidence over his objection, we grant relief on the claim only upon a showing of an abuse of discretion. *Campbell v. Campbell*, 929 S.W.2d 757, 762 (Mo.App. W.D.1996). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Wingate by Carlisle v. Lester E. Cox Med. Ctr.*, 853 S.W.2d 912, 917 (Mo. banc 1993). "Matters of statutory construction and application are reviewed de novo, without deference to the trial court's judgment." *McCormack v. Capital Elec. Constr. Co.*, 159 S.W.3d 387, 402 (Mo.App. W.D.2004).

## Analysis

### I.

■ First, Greenwood claims that the court erred in refusing to either hold an evidentiary hearing or grant a mistrial to address two instances of alleged jury nondisclosure during voir dire. As a threshold issue, we cannot charge the trial court with error for a failure to grant relief for juror nondisclosure unless the juror failed to respond to counsel's questioning during voir dire. " 'Nondisclosure' means failing to reveal or withholding material informa-

---

**4.** The record is not entirely clear as to the cause of these substantial delays.

**5.** Additional facts will be noted as necessary below.

tion." *Farm Credit Servs., P.C.A. v. Slaughter,* 850 S.W.2d 433, 435 (Mo.App. W.D.1993). "[I]t is the duty of a juror on voir dire examination to fully, fairly and truthfully answer all questions directed to him (and to the panel generally) so that his qualifications may be determined and challenges may be intelligently exercised." *Rinkenbaugh v. Chicago, Rock Island & Pac. R.R. Co.,* 446 S.W.2d 623, 626 (Mo. 1969). "[N]on-disclosure can occur only after a clear question on voir dire unequivocally triggers the venireperson's duty to respond. Venirepersons cannot be required to guess at an attorney's meaning." *Keltner v. K–Mart Corp.,* 42 S.W.3d 716, 723 (Mo.App. E.D.2001) (citation omitted). When we review whether an attorney's questions during voir dire are clear, we give no deference to the trial court's ruling on the matter. *Id.*

Greenwood brings our attention to two alleged instances of juror non-disclosure. First during voir dire, Greenwood's counsel asked the jury pool, "Has anyone themselves personally ever been—involved in a civil suit?" Ms. Deshon, who ultimately served on the jury, did not respond to the question. Greenwood, however, alleges that public records[6] reveal that Ms. Deshon's husband filed for bankruptcy several years earlier, and Ms. Deshon filed a pleading entitled "Stipulation of Parties" which addressed her personal rights and interest in marital assets.

"Courts will not permit attorneys to take advantage of their own … ambiguous questions to impeach a verdict they dislike." *Id.* at 723. Here, the phrase

"personal involvement with a civil suit" is ambiguous so far as it relates to Ms. Deshon's limited connection with her then-husband's bankruptcy. While we are not entirely clear as to what is actually entailed when an individual files a "Stipulation of Parties" when not actually a party to an action, we imagine that it is not direct involvement in the suit.[7] Moreover, Greenwood's counsel here phrased the question in such a way as to draw the panel's attention to personal involvement in the litigation by asking if anyone *"themselves personally"* has been involved with a civil suit. By twice noting the personal nature, a prospective juror may reasonably have concluded that Greenwood was asking if they had ever been a party in a civil action or had a significantly more substantial involvement with the civil action than did Ms. Deshon. The record does not indicate that Ms. Deshon was a party to the bankruptcy nor was she substantially involved with the bankruptcy. Therefore, she cannot be faulted with juror non-disclosure.

Greenwood also claims that Ms. Deshon failed to disclose relevant information when asked about her farming experience. Greenwood's counsel asked, "Does anyone else live on farm property or have family or a close personal friend that lives on farm property?" Ms. Deshon responded, "I have a small farm now, and I've spent most of my life on a farm, and my parents still farm." Counsel followed up by asking Ms. Deshon, "Okay. And what do they farm?" She responded by indicating, "Just recently we're dealing with dairy cows and then horses." The lawyer con-

---

6. These records, if they do exist, are not part of the record of this appeal nor are they cited in such a manner that we might easily retrieve them.

7. The bankruptcy stipulation filed by Ms. Deshon is not in the record, and, therefore, we

encounter significant difficulty in evaluating her involvement with the bankruptcy. Nevertheless, Greenwood had opportunity to attach this pleading to his motion for a new trial and failed to do so. See Rule 78.05.

tinued, "Okay. And what did you farm? Is that what you farm, as well?" She responded, "No. I just have cows." Greenwood claims that this response amounted to juror non-disclosure because, previously, Ms. Deshon raised chickens.

Greenwood did not ask if Ms. Deshon ever engaged in any other agricultural activity besides raising cows. Greenwood only asked her about her current agricultural activities, not for a resume of every farming experience she has had. Therefore, she cannot be faulted by failing to volunteer that at an earlier time she raised chickens.

## II.

 Next, Greenwood claims that the trial court abused its discretion in permitting the admission of the maintenance and improvement agreement between MoDOT and the County (the agreement) because it was not part of the condemnation plan.[8] MoDOT and Caldwell County entered into an agreement in which MoDOT would pro-vide the county with 1.5 million dollars when the MHTC closed direct access to Highway 36. Over Greenwood's objection, MHTC admitted evidence of the agreement at the condemnation trial. The evidence was used by MHTC to argue that the condition of the county roads that Greenwood would be forced to use after the condemnation would be improved and, therefore, the taking of the direct access to the highway would not be as burdensome to Greenwood as previously argued. Greenwood claims that it was inadmissible solely because it was not part of its condemnation petition or plans. Without citing to authority, Greenwood asserts, "it is the condemnation plans, and only those plans, that govern what is to be considered for purposes of arriving at just compensation."

 Neither section 227.050 nor Rule 86.04, which describe the condemnation plan, limit the type of evidence that may be presented at trial.[9] We see no

8. Greenwood does not claim in his point relied on that the trial court erred in admitting the evidence of the agreement because its probative value was substantially outweighed by its prejudicial effect; that is, the agreement is speculative as to what actual improvements to the roads will be made.

9. Section 227.050 states:

The engineer shall, as soon as practicable, submit to the commission in writing his recommendations as to detail plans, width of right-of-way and surfaced roadway and type and character of construction for each county, and at the same time furnish a copy thereof to the county clerk for public information. The commission may approve, disapprove, modify or amend the proposals so recommended, and the action of the commission thereon shall be the action of the department on such subject, and shall not be modified or disturbed except by subsequent action of the commission.

Rules 86.04 states:

The petition shall contain a description of the property or right which the plaintiff desires to acquire, use, or extinguish; if a dam is to be constructed across any watercourse, the petition shall contain the name of the watercourse, a description of the point at which it is desired to erect such dam and a description of any installations which it is proposed to erect in connection with the dam; the names of the owners of the property to be condemned, if known, or, if unknown, a statement that they are unknown; a statement of the foundation of the plaintiff's right to condemn the property involved in the condemnation proceedings; a general statement of the nature of the business, improvement or use for which the property is to be taken; a statement either that the condemner or owner can not agree on the proper compensation to be paid or that an owner is incapable of contracting, is unknown, can not be found or is a nonresident of the state; if any right of way be sought, the location and general route thereof shall be described and a copy of the construction plans required by Section 227.050 of the Revised Statutes of Missouri, 1949, shall be filed in the circuit clerk's

requirement in either Rule 86.04 or section 227.050 that all potentially relevant evidence be included in the plans. MHTC was not limited to admitting evidence of the condemnation plans when attempting to prove the fair market value of the property to the jury. "[T]he admissibility of evidence in a condemnation case depends upon whether it tends to help the jury in arriving at the issue of value and damages." *State ex rel. State Highway Comm'n v. Texaco, Inc.*, 502 S.W.2d 284, 288 (Mo.1973). We see no reason why the jury is limited to evidence drawn from the condemnation plan.

In any event, the arrangement between MoDOT and the county was relevant and through Greenwood's cross-examination of MHTC's witness, Greenwood sufficiently explained the contingent and uncertain nature of the agreement. "Evidence is relevant if it logically tends to prove or disprove a fact in issue." *State v. Hutchison*, 957 S.W.2d 757, 763 (Mo. banc 1997) (internal quotation omitted). "[L]ogical relevance has a very low threshold." *State v. Anderson*, 76 S.W.3d 275, 277 (Mo. banc 2002). Here, the condition of the county roads is at issue because the condition of those roads limited Greenwood's farming operation after the taking. MoDOT's provision of 1.5 million to the County for the purpose of improving roads makes it more likely than would be otherwise that the roads will be improved. The fact that the agreement does not mandate that particular improvements be made at a particular time does not render the agreement logically irrelevant. Furthermore, during the

cross examination of MoDOT's assistant district engineer, Greenwood brought to the jury's attention the fact that the 1.5 million would be insufficient to make all necessary improvement to the county roads, and Greenwood could not be assured that improvements necessary to continue to run his swine operation would be made. In this way, any prejudicial effect of the introduction of the agreement was tempered by cross-examination, which explained the contingent nature of the agreement.

### III.

Next, Greenwood claims that the trial court erred in permitting the admission of evidence regarding Greenwood's use and ownership of other property. Over Greenwood's objection, evidence was admitted that showed that crops from other portions of Greenwood's land were brought to the condemned land to be used to feed hogs. Evidence was also admitted that demonstrated that Greenwood used approximately 6,000 acres for his hog raising operation prior to the taking but after the taking Greenwood Swine Systems used only 4,500 acres. Greenwood claims that the use and ownership of the other land is irrelevant.

We disagree. "If less than the entire property is taken, fair market value shall mean the difference between the fair market value of the entire property immediately prior to the taking and the fair market value of the remaining or burdened property immediately after the taking." § 523.001(1). "The jury in a partial taking

office and made a part of each condemnation petition by reference; when property will be benefited by an improvement in connection with which condemnation proceedings are brought, a map of the benefit district involved, and a copy of any local legislation establishing the district shall be filed with the petition and made a part

thereof; a prayer for the appointment of three disinterested freeholders, as commissioners, to assess the damages which such owners may severally sustain because of the condemnation of the property, and the use to which it is to be put and to assess benefits in those instances in which it is proper to make such assessments.

case is entitled to hear evidence of matters which determine the marketability of the remaining property including loss of some access ... If those items cause a lowering of value of the remaining property they may be and should be taken into account by the valuation experts and the jury." *State ex rel. Mo. Highway & Transp. Comm'n v. Wallach,* 845 S.W.2d 703, 705 (Mo.App. E.D.1993). The jury was charged with the task of valuing the condemnation of a portion of Greenwood's land and his direct access to Highway 36. Greenwood used this land for a hog raising operation, which involved the significant movement of fodder across and to the condemned land. Part of the valuation of the taking pertained to the greater difficulty or inability to use other portions of the land and to Greenwood's anticipated use of the remaining land to raise cattle rather than hogs. A broad understanding of Greenwood Swine Systems helps the jury determine the effect of the taking on the operation. "[T]he appellate courts of this state and most other states have long held that in land damage cases errors in admission or exclusion of evidence will not result in the reversal of verdicts unless there is substantial and glaring injustice." *Texaco,* 502 S.W.2d at 289. The use of this other land is relevant to an assessment of the fair market value, and we, therefore, find no glaring and substantial injustice.

## IV.

Finally, Greenwood claims that the court erred in awarding statutory interest to MHTC. In 1999, MHTC deposited and Greenwood received the Commission's initial award. In 2007, a jury held that this amount was excessive. Applying section 523.045, the trial court awarded statutory interest at a rate of 6% per annum for the entire period between the time when Greenwood withdrew the Commission's award in 1999 and the trial

court's judgment in 2007. In relevant part, section 523.045 states, "if the amount of the award shall be superseded by a subsequent verdict or amount smaller than the award paid, then judgment *shall* be entered against [the property owner] to repay to condemner the amount by which the award paid exceeds the amount of the verdict, with six percent interest on such excess payment from the date of the payment of the award." (Emphasis added.) See also Rule 86.10 (stating, "[i]n condemnation proceedings under Rule 86 *interest shall be* recovered in the manner and the amounts as now or hereafter provided by Statutes including Section 523.045 RSMo 1949." (Emphasis added.)) Greenwood claims that the use of the word "shall" does not make the award of interest mandatory.

Neither this court, nor the trial court, is at liberty to ignore a clear mandate from the legislature merely because we might perceive it to work a substantive injustice. Here, section 523.045's mandatory award of interest under these circumstances is clear and without exception. It is applicable to the current situation and the court applied it correctly.

Secondarily, Greenwood claims that the application of section 523.045 violates the "just compensation" provisions of article I, § 26 and the due process provision of art. I, § 10 of the Missouri Constitution. Under Article V, section 3 of the Missouri Constitution, the Missouri Supreme Court has exclusive jurisdiction in all cases involving the validity of a statute. *Glass v. First Nat. Bank of St. Louis, N.A.,* 186 S.W.3d 766 (Mo. banc 2005). The mere assertion that a statute is unconstitutional, however, does not deprive the court of appeals of jurisdiction. *Id.* "The constitutional issue must be real and substantial, not merely colorable." *Id.* In determining whether a constitutional claim is

merely colorable, a preliminary inquiry is made as to whether the claim presents a contested matter of right that involves fair doubt and reasonable room for disagreement. *Dubinsky v. St. Louis Blues Hockey Club,* 229 S.W.3d 126, 131 (Mo.App. E.D.2007). If such inquiry reveals that the claim is so legally and factually insubstantial as to be plainly without merit, the claim may be deemed merely colorable. *Id.*

The initial inquiry reveals that Greenwood's claim is not real and substantial but is merely colorable and without merit. Accordingly, we have jurisdiction to review it. In *State ex rel. State Highway Comm'n v. Lynch,* 471 S.W.2d 261, 264 (Mo.1971), the Missouri Supreme Court examined an identical claim by landowners that interest allowed against them under section 523.045 from the date of payment of the commissioners' award, when the jury's verdict is less than the amount awarded by the commissioners, is unconstitutional. The Supreme Court determined that the statute was within the legislative authority and did not contravene the Missouri Constitution. *Id.* It reasoned:

> The landowner is afforded a choice. If he elects to withdraw the amount deposited, he does so with knowledge of the consequences of a smaller verdict upon jury trial.... The six per cent exacted is a reasonable figure and does not deprive the landowner of his property without due process or deny him just compensation for his property.

*Id.* at 264–65. Greenwood's constitutional claim is denied.

### Conclusion

We affirm the trial court's judgment.

All concur.